Sam and Juene JAFFE, Plaintiffs,

v.

CENTRAL INTELLIGENCE AGENCY
and Department of Justice,
Defendants.

Civ. A. No. 76–1394.

United States District Court,
District of Columbia.

June 10, 1981.

Mark H. Lynch, Susan W. Shaffer, American Civil Liberties Union, Washington, D. C., for plaintiffs.

Lynne K. Zusman, Dept. of Justice, Washington, D. C., for defendants.

## MEMORANDUM OPINION

BARRINGTON D. PARKER, District Judge:

Plaintiffs Sam and Juene Jaffe have brought this proceeding under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, to secure from the Central Intelligence Agency (CIA) and the Department of Justice "all files or records pertaining to Sam and Juene Jaffe."

Before the Court at this time is plaintiffs' renewed motion for sanctions against the Federal Bureau of Investigation (FBI or Bureau) for failure to comply with this Court's orders requiring that agency to submit an adequate index and justification pursuant to *Vaughn v. Rosen*[1] for withholding certain documents. Also pending are defendants' renewed motion for summary judgment and their motion to dismiss the amended complaint for failure to ob-

1. 484 F.2d 820 (D.C.Cir.1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974).

·serve administrative procedures requiring payment for documents released. After considering the parties' motions in light of the record in this case and the *in camera* inspection of the requested documents, the Court concludes that the defendants' motions must be denied. Dismissal of the amended complaint would only delay the resolution of this litigation further. As to the motion for summary judgment, the Bureau's affidavits are insufficiently detailed to allow the Court to make the required *de novo* determination on the exemption claims.[2] Moreover, when compared with the *in camera* documents, the affidavits raise serious questions as to the Bureau's understanding of its obligations under the FOIA. The Court, therefore, will order the Bureau to release certain unclassified information and to submit an additional affidavit *in camera* explaining with specificity the reasons for continuing to withhold certain information. The Court also concludes that· while there is evidence in the record to support the plaintiffs' motion for sanctions, the Court should defer action until after it has reviewed the Bureau's *in camera* submission.

This case has a long and painful history which will not be detailed at this point. A few facts, however, stand out. Since November 1976, the FBI has, on six separate occasions, offered affidavits justifying the withholding of material from the plaintiffs. A total of eleven affidavits have been filed, many of which incorporate by reference explanations and statements contained in earlier affidavits. As the plaintiffs have noted, wending one's way through this mass of material is a tedious and extremely time-consuming exercise. Nonetheless, by comparing various editions of the Bureau's justifications and descriptions of withheld documents, the plaintiffs have pointed to several examples which they maintain clearly indicate that the agency was not fulfilling its obligation under the FOIA in good faith. As a result, they moved to compel compliance with the Act and for sanctions against the Bureau.

At this point the proceeding was referred to a Magistrate for a report and recommendation on the exemption (b)(1) claims.[3] After careful review and consideration, the Magistrate concluded that several matters in the public record created substantial doubt as to the good faith of the FBI exemption claims.[4] He then recommended that the Court undertake an *in camera* review of the documents. This the Court has done and its conclusions are set out below, first, as to the material withheld in the interest of national defense or foreign policy under section 552(b)(1) (national security or exemption (b)(1) material), and then as to the remaining exemptions.

I

The bulk of the material not released to the plaintiffs is withheld under exemption (b)(1), 5 U.S.C. § 552(b)(1). The exemption protects materials that are:

(A) specifically authorized under criteria established by Executive Order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive Order.

The affidavit of Special Agent Jerry Graves[5] provides the most recent agency descriptions and justifications for withholding classified information.

After reviewing the Graves affidavit, the Magistrate concluded that it failed to "provide a sufficient basis on which ... [to] make a responsible *de novo* ruling on the claims of exemption" and recommended *in*

---

2. The CIA documents in question are discussed in Part III, *infra.*

3. The matter was assigned to Magistrate Henry M. Kennedy pursuant to Local Rule 3–8.

4. Magistrate's Memorandum Opinion of October 29, 1979, at 5–6. (Opinion of October 29, 1979).

5. Filed July 2, 1979, supplemented October 26, 1979 (Graves Affidavit). Justifications for withholding unclassified information under other exemptions are contained in a separate document, the Fourth Affidavit of Special Agent Richard Schweickhardt, filed July 7, 1977.

*camera* review of the documents.[6] Plaintiffs objected to this course, arguing that it denied them the opportunity to participate fully in the litigation. Instead they renewed their motion for sanctions and asked that more detailed justifications be ordered. In the interim, plaintiffs also deposed the affiant and have filed the transcript of his testimony with the Court. Based on the Magistrate's recommendation and the entire record, the Court determined that *in camera* inspection was warranted. The documents were provided to the Court on July 1, 1980.

■ After examining the documents and then reviewing the Bureau's affidavits and the Graves deposition, the Court determines that there are several grounds for denying the defendants' motion for summary judgment. First, the Graves affidavit has serious shortcomings. As the Magistrate noted, it does not significantly increase the amount of justifying information available to the Court or to the plaintiffs. Second, the agency continues to withhold entire paragraphs as exempt, even when there are reasonably segregable portions of the paragraphs which contain no classified information and which can be released without harm to the national security. Third, the *in camera* inspection has revealed a number of inconsistent classification and withholding practices which are not explained by anything offered in the Graves affidavit or any of the prior agency submissions. Finally, as *in camera* inspection suggests and the Graves deposition confirms, Special Agent Graves lacked sufficient background in either counterintelligence investigations or foreign affairs to make the type of informed judgments concerning material in the Jaffe file which he offers as justifications for nondisclosure in his affidavit.

■ 1. As Magistrate Kennedy pointed out, the Graves affidavit fails to provide descriptions of deletions which are suffi-

ciently precise to allow a Court to make the required *de novo* determinations.[7] In many cases the additional descriptive material provided is trivial, and in no way describes the substance of what has been withheld. The problem presented by this inadequacy is partially alleviated by the Court's decision to examine the documents *in camera*. But an inadequate affidavit also reduces the ability of the requester to participate in the litigation, and throughout this proceeding, plaintiffs have been handicapped by the Bureau's refusal to provide adequate descriptions. They have therefore asked that the Bureau be required to file further affidavits. The agency, however, has represented that it cannot provide anything beyond the descriptions and justifications in the Graves affidavit without revealing sensitive material. After reviewing the documents *in camera*, the Court holds some doubts about the Bureau's position; some material seems susceptible to more detailed description, or even release, without harm.[8] Nonetheless, a sufficient number of records appear sensitive enough to require that any further descriptions be made *in camera*.

■ 2. The defendants have employed exemption (b)(1) to withhold entire paragraphs from documents, even where the paragraph includes segregable non-exempt information.[9] When questioned on this point at his deposition, Graves could provide no written authority for the practice of withholding entire paragraphs. He responded that it was a "general policy" to classify by paragraph, and that he had been directed to do so.[10]

This practice clearly ignores the statutory instruction that an agency release "reasonably segregable" non-exempt material. 5 U.S.C. § 552(b); *see Department of the Air Force v. Rose*, 425 U.S. 352, 374, 96 S.Ct. 1592, 1605, 48 L.Ed.2d 11 (1976). Under the plain language of the statute, the reason-

---

**6.** Opinion of October 29, 1979, at 1.

**7.** *Id.*

**8.** See part I–3 *infra*.

**9.** See Deposition of Special Agent Jerry Graves (Graves deposition), filed June 27, 1980, at 107–09, 439–40, 485–86.

**10.** *Id.* at 108–09, 118.

ably segregable requirement applies to classified information withheld pursuant to exemption (b)(1). *Church of Scientology v. Department of the Army,* 611 F.2d 738, 743–44 (9th Cir. 1979); *Founding Church of Scientology v. Bell,* 603 F.2d 945, 950–51 (D.C.Cir.1979) (rejecting agency efforts to classify and withhold entire documents because they contained some sensitive information). The determination that material should be released therefore turns not on the agency's classification practices, but on whether unclassifiable material may be broken out from sensitive matters and released. Agent Graves specifically testified that this type of segregation and release was possible in this case.[11]

After the deposition, the government filed two affidavits to support its position that classification of entire paragraphs is proper.[12] While these affidavits, and the authorities they cite, establish that the defendant here is required to classify documents at least down to the paragraph level, they do not rule out classification in smaller units. Considering the FOIA requirement that "reasonably segregable" non-exempt portions be released, the Court questions whether an agency's classification practices and policies can be interposed to withhold non-exempt, unclassified information simply because it appears in the same paragraph as classified information.

More importantly, the Bureau's practice in this case of withholding entire paragraphs on the basis of exemption (b)(1) is seriously undermined by its inconsistent application, both in this proceeding,[13] as well as in two other FOIA matters currently before this Court.[14] The material withheld in each instance is usually an individual's name or other identifying information. The agency plainly has no inflexible rule or uniform practice on withholding entire paragraphs when only a portion of that paragraph contains classified material. There is nothing in the record to indicate why less-than-paragraph withholding cannot be used, particularly when only a single name or identifying sentence is classified. Special Agent Graves admitted it was possible in a number of situations, and the agency's own affidavits indicate it is practical. The Bureau will therefore be required to follow consistently the same practice in this proceeding that it has employed intermittently in this and other FOIA actions before this Court and to release to the plaintiffs reasonably segregable, non-exempt portions of those paragraphs currently withheld under exemption (b)(1).

■ 3. The Court's instruction to the defendants to release additional non-exempt material from classified paragraphs should not be interpreted as in any way approving all of the classification decisions. *In camera* review raised doubts about the propriety of many of these determinations, doubts which the affidavits do little to resolve. The Court will point to but a few examples.

In document 75, the Bureau has classified and withheld the following paragraph on page one:

Informant [Jaffe] accompanied NIKITA KHRUSCHEV on his recent tour of the US. He furnished information with respect to his contacts with Soviet nationals during this trip; however, these contacts were limited and for the most part con-

---

11. *Id.* at 107–09, 439–40, 485–86.

12. Affidavit of Robert W. Wells, Director, Information Security Oversight Office, GSA, filed July 25, 1980; Affidavit of Lloyd E. Dean, Special Agent of the FBI, filed July 25, 1980.

13. *See, e. g.,* "Main File" documents 29, 108, 189 at 28–29; "see reference" documents 19, 50.

14. In both *Pratt v. Webster,* C.A. No. 78–1688, and *Holy Spirit Association v. FBI,* C.A. No. 79–1339, the defendant FBI submitted Vaughn indices and affidavits which occasionally withheld classified information in units smaller than a paragraph. The FBI's affidavit in *Pratt* was filed only five months following the Graves affidavit in this case; the affidavit in *Holy Spirit Association* was filed only one month after the Graves affidavit. *See, e. g.,* affidavit of David S. Byerly, C.A. No. 78–1688, filed November 28, 1979; Exhibit GG document 308, p. 2, doc. 316; affidavit of Hugh James McMenamin, C.A. No. 79–1339, filed August 3, 1979, documents 82, 83, 86.

fined to the informant's efforts to obtain permission to accompany KHRUSCHEV on his return flight to the Soviet Union. Informant never did succeed in obtaining permission to accompany KHRUSCHEV.

The Graves affidavit describes the material contained in this paragraph by stating:

> [t]he classified information contained in paragraph 1 assesses the information furnished by plaintiff in October 1959, regarding his recent contacts with foreign officials of foreign counterintelligence interest to the FBI.

The same affidavit justifies withholding this information by stating that it "is classified 'Confidential' in that it would reveal the FBI's interest in a specific foreign relations matter." The "identifiable damage" that could reasonably be expected to result from release or a more detailed description of this paragraph is set out in the first part of the Graves affidavit:

> This information is classifiable under Section 1–301(d). The activities referred to here are generally referred to as intelligence activities, and involve an agency of the United States government, in this country or in another country, trying to collect information about a foreign country or trying to prevent a foreign country from collecting information about our country. The existence of such activities may be known to both governments involved, but the rules of diplomacy prevent them from being publicly acknowledged. If they do become public, the aggrieved country may be forced to protect or retaliate either diplomatically or otherwise, to the detriment of our foreign relations. On the other hand, if the country against whom an intelligence activity is being conducted does not yet know about it, disclosure of the activity could eliminate its effectiveness. The harm to our national security then is either that we might well be forced to end a useful

activity, or that its disclosure would reasonably be expected to cause a deterioration of our relations with another government, or both. To state with greater specificity the activities or countries involved could bring on the harm sought to be avoided.[15]

This explanation simply does not justify withholding the paragraph from document 75 quoted above. The information contained in this paragraph indicates that in 1959 Jaffe accompanied Khruschev on his tour of this country, and that Jaffe endeavored to secure permission from Soviet officials to accompany Khruschev back to the Soviet Union. At this point, withholding this information seems unnecessary, since most of these facts are a matter of public record. Jaffe's relationship with the FBI is now known, and the FBI documents indicate that Jaffe published news articles detailing his travels with the Soviet Premier. The revelation that he approached Soviet officials in an unsuccessful effort to secure permission to accompany Khruschev on his homeward flight does not impress the Court as one which in any way affects the national security.[16]

A further example of the agency's questionable classification and withholding practices appears through a comparison of documents 113 and 116. The final paragraph of document 113 states that:

> Jaffe has been given the code name of Harry Hines. During his visits to Paris he will telephonically contact the American Embassy and identify himself as Harry Hines and ask to speak to the Legal Attache.

According to the Graves affidavit, this material is "classified in that it would reveal the FBI's interest in a specific foreign relations matter." A more detailed description of this material could reasonably be expect-

---

15.  Graves Affidavit, ¶ 7(a).

16.  The Court notes that in a subsequent document, No. 131, the agency released the following: "[Jaffe] left the US on 1/13/62, for East Berlin, where he is covering the visit of the Soviet Premier NIKITA KHRUSCHEV to that city. Informant will return to Moscow with KHRUSCHEV and complete his assignment there. He does not contemplate being available for interview in the US until November or December, 1963."

ed to result in the identifiable damage to our foreign relations related above.[17]

Such damage, if it is going to occur, should have come to pass by now, since on November 6, 1975, the agency released the following paragraph from document 116:

During the week of November 19, 1961, Jaffe will contact Legal Attache in the United States Embassy in Paris, using the code name Harry Hines. He will make this contact by phone. His contact with the Legal Attache in Paris will be contingent upon Jaffe having sufficient time to make this contact.

The agency's classification and withholding decisions on these two documents appear completely inconsistent and are in no way clarified by the terse—and misleading—description and justification provided in the Graves affidavit.

But perhaps the most egregious example of dubious classification practices appears in document 108. The first of the two classified paragraphs on page one of that document states:

Although informant's contacts with Soviet and satellite officials have been quite frequent during the past four months, they have not been as frequent as in the past.

The Graves affidavit continues to classify this paragraph and incorporates by reference the description and justification offered in the Pramik affidavit that: "information contained therein would reveal an intelligence source or method as well as the FBI's interest in a specific foreign relations matter."[18] On the same page, however, the agency released the following information:

Informant has also attended receptions in Soviet and satellite circles and has furnished information with respect to other individuals in attendance at these affairs who are not Soviet or satellite officials. In conversation with Soviet and satellite officials, informant has become aware of the Soviet feelings on current affairs, their family problems and desires.

Later in the same document, the agency released an additional paragraph:

During recent contacts informant has shown an increasing dissatisfaction with his employment at CBS. This has in some respects accounted for the decrease in his contacts with Soviet nationals as he has been seeking employment elsewhere.

Neither the Pramik nor the Graves affidavit offers any hint why the first paragraph must be classified and withheld while the latter two can be released. Nor is any plausible explanation apparent when these paragraphs are put in context.

These are but a few examples which reflect many of the classification and withholding determinations in this case, determinations which are often inconsistent and unexplained, and sometimes baffling. It strongly suggests that the agency has failed to live up to its obligations under the FOIA, despite repeated opportunities to do so over the history of this case. Nonetheless, the Court will not order release of all documents at this stage, for judges should "hesitate to order the release of material that would allegedly do grave damage to the national security without judicial scrutiny of the merits of the allegation." *Halperin v. Department of State*, 565 F.2d 699 (D.C. Cir. 1977). Accordingly, the Court will require the Bureau, after releasing all segregable material, to provide an *in camera* affidavit explaining in detail the reasons for withholding any material which cannot be released to the plaintiffs. In particular, the Court should be advised of the "identifiable damage" that would result from disclosure. The affidavit shall address each document separately and shall not incorporate by reference previous affidavits or pleadings filed in this case.

■ 4. Many of the shortcomings in the Graves affidavit undoubtedly result from the affiant's admitted lack of familiarity with plaintiffs' involvement with the FBI and the agent's lack of expertise in both foreign intelligence investigations and for-

17. See text accompanying footnote 14, *supra*.

18. Affidavit of John J. Pramik, filed December 13, 1978, at 73, discussing document 108.

eign relations.[19] The process of reviewing the documents in this case would seem to call for at least a reasonable familiarity with these areas in order to make the judgments necessary in any decision to disclose. Graves states that although he made the final decision on classification, he frequently sought the advice of Special Agent Richard Kinsey, a previous affiant in this case and an agent with twenty-one years of experience in foreign counterintelligence investigations.[20] In fact, it appears from Graves's deposition that Kinsey prepared, in advance of Graves's review of the plaintiffs' file, a memorandum containing his "recommendations" on which material could be released.[21] Graves testified that he consulted this memorandum while making his own determinations and that he discussed all declassification decisions with Kinsey. He further testified that his own decisions on declassifications were identical to those prepared by Agent Kinsey.[22] To avoid the obvious problem this practice created in connection with the Graves affidavit, the Court anticipates that the Bureau will submit an *in camera* affidavit prepared by a person with sufficient personal knowledge and background so as to explain completely to the Court why certain material is exempt from disclosure.

In sum, the Court's *in camera* review of plaintiffs' file and the deposition of the most recent affiant have raised grave doubts concerning the agency's application of exemption (b)(1). However, since the Court does not presume to be an expert on either foreign affairs or counterintelligence matters it will reserve final judgment pending review of the agency's *in camera* submission.

## II

■ The Bureau also used the (b)(2) and the (b)(7)(C) exemptions to withhold significant amounts of material. The Court's *in* camera review has also revealed the misapplication of these exemptions in a number of situations.

One example of this occurred when the government offered the Graves affidavit. In the course of reviewing the documents for this affidavit, the agency determined that some information classified under superseded EO 11652 need not be classified under the new standards set out in EO 12065. This material was declassified and released to plaintiffs, and copies of the documents containing this material were appended to the Graves affidavit. As the Magistrate noted, some of the new disclosures suggested inadvertent releases or inconsistencies in withholding policy. The most striking example was the release of a previously-withheld paragraph from an informant summary report. The reports, in a standard form, are divided into fourteen sections which appear in the same order in each report. There are at least nine of these documents included in the main file maintained on Sam Jaffe, including document 90. Appendix H to the Graves affidavit releases, for the first time, a portion of document 90, entitled "Indoctrination Against Disclosure." The text of this paragraph reads as follows:

### 12. Indoctrination Against Disclosure

Informant has been repeatedly advised of the necessity for respecting the Bureau's confidence. He is most security-conscious in view of his employment as a news reporter with CBS as he is aware that his career would be jeopardized if it became known that he is furnishing information to the Bureau on a confidential basis.

The corresponding paragraphs in all other informant reports have been withheld under exemption (b)(2), as was this paragraph from document 90 until the Graves affidavit was filed.

---

**19.** Graves deposition at 10, 232–39.

**20.** *Id.* at 28–36. *See* Affidavits of Richard Kinsey, filed December 8, 1976, July 8, 1977. Kinsey also reviewed the Graves affidavit and concurred in the determinations made in that docu-

ment. *See* Affidavit of Richard Kinsey, filed August 17, 1979.

**21.** *Id.* at 28–30.

**22.** *Id.* at 35–36.

In his October 1979 Opinion, Magistrate Kennedy referred to this inconsistency and noted that it creates particular doubt as to the Bureau's exemption claims. In its opposition to plaintiffs' Partial Objection to the Magistrate's Order, the defendants suggested that the Magistrate's questions about the agency's good faith "appear to reflect factual misunderstandings which the government believes will be cured by the *in camera* inspection." In a footnote, defendants explained the release of this previously-withheld paragraph by stating that no explanation appears in the Graves affidavit because the "information in fact was not *declassified* because it had not been *classified*." (Emphasis in original) [23]

This explanation misses the point. In connection with the Graves affidavit, previously-exempted information in section 12 of document 90 was released. Although this material had never been classified, it had been withheld. No explanation for its release was given in the Graves affidavit and the *in camera* inspection by the Court has revealed that virtually identical material continues to be withheld in other documents under the (b)(2) exemption. In short, release of this paragraph undercuts the Bureau's claim that this material was properly withheld in the first instance.

Aside from the obvious inconsistency of releasing this information in one document while continuing to withhold it in several others, the Bureau's action demonstrates disregard for the legal requirements governing exemption (b)(2). That exemption allows an agency to withhold material "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). It has been authoritatively construed to apply only "to 'routine matters' of 'merely internal significance' in which the public lacks any substantial or legitimate interest." *Lesar v. United States Department of Justice*, 636 F.2d 472, 485 (D.C.Cir.1980), citing *Rose v. Department of the Air Force*, 425 U.S. 352, 369–70,

96 S.Ct. 1592, 1603, 48 L.Ed.2d 11 (1976). Matters generally withheld under exemption (b)(2) include trivial administrative personnel rules concerning hours and pay. *Allen v. Central Intelligence Agency*, 636 F.2d 1287, 1290–91, (D.C.Cir. 1980). "[T]he general thrust of the exemption is simply to relieve agencies of the burden of assembling and maintaining for public inspection matter in which the public could not reasonably be expected to have an interest." *Rose*, 425 U.S. at 369–70, 96 S.Ct. at 1603.

■ The Bureau has not adhered to these principles. The most recent justifications for (b)(2) withholding appear in the Fourth Affidavit of Richard Schweickhardt. The affidavit explains that the agency is using (b)(2) to withhold "internal administrative practices or instructions to FBI personnel relative to the handling and development of confidential sources." These include:

a) when to contact an informant;

b) sufficiency of contacts with informant;

c) reporting instructions relative to the debriefing of informant;

d) expenditures to be made to informant;

e) steps to be taken in developing an informant; and

f) evaluation of informant which includes a prognosis for future productivity.

The paragraph released in document 90 was withheld under this justification. The Bureau's rationale offered for withholding this type of material under (b)(2) is as follows:

All of the above are instructions to personnel to assist them in the development and maintenance of informants. To release to the public the methods used by FBI personnel in the recruitment and handling of informants would place targets of FBI foreign counterintelligence investigations on notice as to these procedures and enable them to take counter measures to circumvent these practices.

Despite the use of much of the language from exemption (b)(2), the agency's justifi-

---

**23.** Defendants' Opposition to Plaintiffs' Partial Objection to the Magistrate's Order, filed December 4, 1979, at 2, fn. 2.

cation stretches that exemption too far. As the paragraph from document 90 revealed, and the Court's *in camera* inspection has confirmed, exemption (b)(2) has been used to withhold substantive information concerning the FBI's use of plaintiff as an informant.[24] Although some of this material might conceivably be withheld under other exemptions, the agency has chosen to rely solely on (b)(2). This type of information may plainly be of interest to persons outside the agency and should be released to plaintiff. The Court has no intention, however, of injuring third parties whose names may appear in segments withheld under (b)(2). The defendant may therefore delete the names of third parties entitled to protection under the FOIA who are mentioned in the (b)(2) material which is to be released.

■ Although the agency has asserted the (b)(7)(C) exemption less frequently than (b)(2), it has still managed to misapply it. That exemption allows agencies to exempt "investigatory records compiled for law enforcement purposes, but only to the extent that production of such records would . . . (C) constitute an unwarranted invasion of personal privacy." In document 51, however, the Bureau has used that exemption to withhold a paragraph that contains neither the name or any identifying information that might invade the privacy of a third party. Such withholding is impermissible, and the agency should release this information.

Thus, in addition to misapplying the national security provisions, the FBI has misconstrued the scope of other exemptions to the FOIA, particularly (b)(2). In reviewing the plaintiff's file, the agency should take care to release all the material which the Court has indicated is not exempt. Although the Court has not attempted to list every instance of agency noncompliance, fair warning has been given as to which practices are plainly not permitted under the FOIA. The Court anticipates that the

agency will be able to follow the Court's instructions and release all segregable non-exempt material without further delay.

### III

Two additional matters require the Court's attention: the Magistrate's recommendation that the Court examine certain CIA documents *in camera* and defendants' motion to dismiss the amended complaint.

Although most of the energy expended in the course of this litigation has focused on the FBI documents, plaintiffs also requested documents from the CIA. That agency has released some documents but has withheld others, relying primarily on exemption (b)(1); exemption (b)(3), covering material specifically exempted from disclosure by statute; and exemption (b)(6), covering material which when released would constitute a "clearly unwarranted invasion of personal privacy."

■ At the direction of the Court, Magistrate Kennedy reviewed the CIA's affidavits, and with some exceptions, found them to be in compliance with the law. He expressed reservations about a number of documents and recommended that the Court inspect the withheld material *in camera*.[25] After reviewing the CIA affidavits, the Court has concluded that the Magistrate's recommendations should be accepted.

■ For the most part, the CIA's affidavits provide more specific descriptions and justifications than do their FBI counterparts. Generally, the information described by the affidavits "logically falls within the claimed exemption." *Baez v. Department of Justice*, 647 F.2d 1328, 1335 (D.C.Cir. 1980). Since the statements in the CIA affidavits are not undermined by any material in the record or by evidence of bad faith, they are entitled to substantial weight. *Id.* As the Magistrate noted, however, the descriptions for a few CIA records

24. Other examples of improper use of the (b)(2) exemption occur in documents 10, 31, 32, 37, 38, 39, 43, 45, 53. This is by no means an exclusive list.

25. Magistrate's Order of September 20, 1978.

provide an insufficient basis for passing on the agency's claims of exemption. The CIA will therefore be required to produce these specified documents for *in camera* inspection.[26]

Plaintiffs' amended complaint involves only records maintained by the FBI. In that pleading, plaintiffs request that the Bureau search records maintained at certain FBI field offices in this country and legats overseas. The agency has moved to dismiss the amended complaint on the grounds that plaintiffs have failed to comply with regulations requiring payment for processing documents. In view of this, the government argues there is no reason to enlarge this lawsuit with what is essentially a new FOIA request. Nonetheless, the Bureau has retrieved all the documents covered by the plaintiffs most recent request.[27]

At this point in the litigation, it would be extremely inefficient for the Court and the parties to consider the field office and legat documents separately from those already examined in this case. It was revealed during the Graves deposition that most, if not all, of the legat documents concerning the plaintiffs would be contained in the FBI's main files at that agency's headquarters in Washington.[28] Presumably, those documents forwarded to headquarters have already been indexed and either released to plaintiffs or withheld under one of the exemptions. Those records not forwarded are now available at headquarters for processing. At this late date, granting the defendants' motion to dismiss, which relies on purely procedural grounds, would serve only to delay this litigation further. The motion to dismiss the amended complaint is

therefore denied, and the agency's precondition that payment for documents produced in the past be received before additional records are released is waived. The documents collected from the field offices and legats will be processed and an index containing a detailed description and justification pursuant to *Vaughn v. Rosen* of all documents not previously indexed shall be filed with the Court and served on counsel for the plaintiffs. In addition, the defendants shall submit to the Court *in camera* a complete set of the field office and legat documents without redactions and an *in camera* affidavit explaining in detail the reasons for withholding particular information. Submission of these materials will enable the Court to make an appropriate determination as to all of the FBI records involved in this litigation.

## IV

There remains the question of sanctions. The plaintiffs have charged that the Bureau is fighting "a war of attrition" designed to wear down its opposition with masses of paper and a maze of interconnected affidavits. The description is an apt one. Much in the history of this case suggests that the Bureau has been recalcitrant in meeting in its obligations under the FOIA. Its submissions have been voluminous, unwieldy, and for the most part, unenlightening. The plaintiffs, however, go further and assert that the Bureau through the Graves affidavit has selectively released or described documents which contain disparaging information concerning Sam Jaffe.[29] Plaintiffs allege that the Bureau's action is a vindictive attempt to discourage them from pursuing their FOIA request.

---

26. The documents are identified in the accompanying order.

27. Memorandum in Support of Defendants' Motion to Dismiss the Amended Complaint at 10 (filed July 25, 1980). The amount in controversy is approximately $147.50. *Id.* Attachment.

28. Graves deposition at 219–20, statement of James Allen Bourke, Esq., Legal Counsel Division, FBI.

29. Plaintiffs assert that new material released in conjunction with the Graves affidavit is limited to revealing that Sam Jaffe was an FBI informant and that the FBI concluded that he might be serving as an agent for a foreign intelligence service. Indeed, the description of material withheld in document 196 relates that two FBI field offices had concluded that a foreign intelligence agency considered Jaffe to be its agent, even though Jaffe might not have considered himself so. Jaffe vehemently denies he was ever a foreign agent.

There appears to be some support for this contention. For example, it is difficult to reconcile the Bureau's revelation that Jaffe was an FBI informant and a suspected "agent of a foreign intelligence agency" with its continued withholding of entire paragraphs simply because they mention Jaffe's "contacts" with unspecified "Soviet nationals."

Plaintiffs have asked that the Bureau be held in contempt and that they be awarded attorney fees. Despite the considerable evidence that such steps may be appropriate, the Court will defer ruling on these points until after it has examined the *in camera* affidavit to be provided by the Bureau. Should that agency prove unable or unwilling to justify its classification and withholding decisions, the Court will take the steps necessary to grant the plaintiffs appropriate relief.

### V

In sum, the Court's *in camera* review of the documents in this case has demonstrated that a considerable amount of additional information should be released to the plaintiffs. In addition, it has revealed numerous inadequacies in the descriptions and justifications provided in the Graves affidavit, as well as in previous Bureau offerings. Finally, it has created substantial doubt in the Court's mind whether the Bureau is applying classification criteria and exemption (b)(1) properly and in good faith. The Bureau will therefore be required to release additional unclassified material to the plaintiffs and to submit, *in camera*, a detailed affidavit justifying the withholding of all material not released to the plaintiffs under the terms of this Opinion.