**Sam and Juene JAFFE, Plaintiffs,**

v.

**CENTRAL INTELLIGENCE AGENCY,
et al., Defendants.**

**Civ. A. No. 76–1394.**

United States District Court,
District of Columbia.

Oct. 14, 1983.

Susan W. Shaffer, American Civil Liberties Union, Washington, D.C., for plaintiffs.

David M. Glass, Civil Div., Dept. of Justice, Washington, D.C., for defendants.

## MEMORANDUM OPINION

BARRINGTON D. PARKER, District Judge:

Seven years ago, plaintiffs Sam and Juene Jaffe commenced this proceeding under the Freedom of Information Act (FOIA), 5 U.S.C. § 552 (1976), seeking all files or records pertaining to them in the possession of the Federal Bureau of Investigation (FBI) and the Central Intelligence Agency (CIA). The government has relied upon several FOIA exemptions pursuant to 5 U.S.C. § 552(b) to support the withholding of various documents and portions thereof: subsection 552(b)(1)—national security and foreign policy information; (b)(3)—material specifically exempted by statute; (b)(6)—information in personnel, medical and similar personal files; (b)(7)(C)—matters affecting personal privacy in the investigative records context; (b)(7)(D)—information relating to law enforcement confidential sources; and (b)(7)(E)—material which would reveal investigative procedures and techniques.

The volume of relevant documents is unusually large. This fact, together with the FBI's reluctant and sluggish response during this litigation in processing the materials, has caused needless rounds of affidavit and document review in an unnecessarily protracted proceeding. On numerous occasions the FBI's submissions have been woefully inadequate. At present the Court has under consideration a number of public *Vaughn* [1] affidavits, together with several comprehensive affidavits and unredacted copies of the actual documents for *in camera* inspection. The matter is now presented on cross-motions for summary judgment. The Jaffes contend that the FBI has still not demonstrated the adequacy of its search and the legal sufficiency of its exemption claims. The FBI contends that through its most recent set of affidavits, especially the *in camera* submissions, it has sustained its burden under FOIA.

For the reasons set out below the Court determines that summary judgment should be entered for the government. The Court also determines that the Jaffes are entitled to counsel fees because they succeeded in securing numerous documents which were wrongfully withheld without reasonable justification and because they were put to unnecessary expenditure of resources, time and effort due to the government's intransigence.

## BACKGROUND

Plaintiff Sam Jaffe is a journalist and media correspondent who held a variety of prominent positions in his field, including a post as the Moscow correspondent for the Columbia Broadcasting System (CBS). His position in Russia drew the interest of intelligence-gathering agencies of the United States, and Jaffe apparently provided information to American agencies on a confidential basis. That relationship spanned a number of years. At some point, however, the connection soured when the suspicion developed that Jaffe had actually become an agent for a foreign intelligence service.[2]

Concerned that Jaffe's reputation may have been maliciously and falsely impugned, the Jaffes submitted FOIA requests in March 1975 to the Justice Department and the CIA for any records pertaining to themselves. The FBI and CIA processed the requests, retrieving those documents which were responsive to the inquiry and then analyzing the materials to determine whether they were exempt from release in whole or in part. After the FBI and CIA determined that certain documents were exempt, the plaintiffs sought judicial relief by filing the complaint in this

---

**1.** *Vaughn v. Rosen*, 484 F.2d 820, 826–27 (D.C. Cir.1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974).

**2.** *See Jaffe v. Central Intelligence Agency*, 516 F.Supp. 576, 578 n. 29 (D.D.C.1981).

proceeding on July 27, 1976, challenging the propriety of the defendants' withholding determinations.

The years after the filing of the complaint and an initial motion of the plaintiffs for *Vaughn* indexing were consumed by disputes over the adequacy of the withholding justifications advanced by the FBI. The first six rounds of justifications, spanning three years, included some two dozen affidavits, as described in the Memorandum Opinion of this Court entered on August 11, 1981, in response to an FBI motion to extend the period for its compliance with an Order for release of information and justification. *Jaffe v. Central Intelligence Agency*, 520 F.Supp. 124 (D.D.C.1981). The six rounds of justifications were characterized by the FBI's consistent inability to produce satisfactory explanations for its unacceptable conduct in assessing the documents and making FOIA withholding determinations. On one such occasion the parties informally agreed that certain affidavits were inadequate. On others, this Court and a United States Magistrate, upon careful review of the record in this proceeding, concluded that the government submissions were grossly insufficient. The government's justifications were found to suffer from serious omissions, inconsistencies, and extreme vagueness. *Id.* at 125. Consequently, on each occasion the court required the government to provide justifications which were more particularized and accurate. Only later, as a result of these subsequent reviews, did the government release additional information which it had wrongfully withheld.

A critical point in this proceeding came with the government's response to a Memorandum Opinion entered by the Court in June 1981. *Jaffe v. Central Intelligence Agency*, 516 F.Supp. 576 (D.D.C.1981). At that time the Court determined that the FBI had again misapplied several FOIA exemptions and accordingly directed the submission of an additional round of justifications.[3]

The matter was further complicated, however, by the expansion of the scope of the proceeding to include additional FBI materials which had not been previously processed. The FBI's initial retrieval encompassed FBI Headquarters documents. However, in the Spring of 1981 the scope of the request was expanded to include documents located in FBI Field Offices in New York, Washington, San Francisco and Baltimore, as well as overseas offices known as "Legats", in Ottawa, Hong Kong and Moscow. *Id.* at 587.

Not surprisingly in light of the history of deficient justifications which cluttered the record, compliance with the June 1981 Opinion required that the FBI reprocess all of the previously withheld Headquarters documents. The FBI released additional information to the plaintiffs and then submitted affidavits in the fall of 1981 for the public record and for *in camera* inspection together with unredacted copies of all responsive documents for the Court's review.[4]

In November 1982, the plaintiffs filed a motion for summary judgment or, in the alternative, for further *Vaughn* affidavits or sanctions. They contend that the public *Vaughn* affidavits submitted by the FBI in

**3.** Shortly thereafter, however, the Court determined that summary judgment in favor of the CIA was appropriate on the basis of agency affidavits and *in camera* inspection. *See* Order of July 17, 1981 at ¶ 1.

**4.** The following affidavits are currently before the Court: Affidavits of FBI Special Agent (SA) G.R. Schweickhardt—VII (executed October 6, 1981) (*in camera*: exemptions (b)(3), (b)(7)(C), and (b)(7)(D)), VIII (October 14, 1981) (reprocessing efforts), IX (December 11, 1981) (Field Office and Legat documents), X (December 11, 1981) (*in camera*); Affidavits of FBI SA P.W.

Kellen—VI (October 6, 1981) (*in camera*: exemption (b)(1)); VIII (December 14, 1981) (Field Office and Legat documents); IX (December 15, 1981) (*in camera*: Field Office and Legat documents); Affidavits of L.J. Dube (October 5, 1981, and December 11, 1981) (CIA); Affidavits of E.F. Yeates (October 2, 1981) (National Security Agency *in camera* and public affidavits); Affidavit of T.W. Ainsworth (October 9, 1981) (State Department); Affidavit of M.L. Garrett (October 9, 1981) (State Department); Affidavit of F.M. Machak (October 9, 1981) (State Department).

response to the June 1981 Opinion are still inadequate and that the plaintiffs are therefore entitled to summary judgment and an order directing the FBI to release *all* of the disputed documents. The plaintiffs' motion seeks alternative relief in the form of a Court directive requiring the submission of further *Vaughn* affidavits to remedy numerous defects in the most recent public justifications.

In this regard, the plaintiffs also advance the proposition that their counsel be permitted to participate in the *in camera* examination to assist the Court and to suggest means through which the various deficiencies in the FBI's affidavits might be overcome. Although the issue of a requester's participation in *in camera* proceedings in person or through counsel has not been fully resolved, *see, e.g., Arieff v. U.S. Department of the Navy*, 712 F.2d 1462, 1470 n. 2 (D.C.Cir.1983), the Court takes the position in this case that the various affidavits and documents before it are sufficient to form a basis for this decision. Particularly given the sensitive nature of some of the national security material, the risks and problems attendant to such a procedure counsel against permitting plaintiff's participation. *Salisbury v. United States*, 690 F.2d 966, 973–74 n. 3 (D.C.Cir. 1982); *Hayden v. NSA/Central Security Service*, 608 F.2d 1381, 1386 (D.C.Cir.1979), *cert. denied*, 446 U.S. 937, 100 S.Ct. 2156, 64 L.Ed.2d 790 (1980). In opposition, the government has renewed an earlier dispositive motion; it relies principally on its most recent *in camera* filings.

### ANALYSIS

Having summarized briefly the background to this litigation, the Court now proceeds to a two-part analysis of the government's exemption claims. In Part A the Court reviews the general nature and sufficiency of the public and *in camera* affidavits in light of the criticisms levied by the plaintiffs. In Part B the Court assesses the merits of the government's exemption claims.

### A.

■ To further the broad policy of disclosure embodied in FOIA, in every action under the Act the burden is on the government to demonstrate the validity of its determination that requested material must be withheld. 5 U.S.C. § 552(a)(4)(B). Rather than permitting a mere blanket assertion of withholding authority by an agency, that burden requires a showing that withheld material clearly falls within the parameters of one of the seven FOIA exemptions codified at 5 U.S.C. § 552(b). In this proceeding, the government has submitted public and *in camera* affidavits. Although FOIA proceedings are preferably resolved on the basis of affidavits alone, *see Church of Scientology of California, Inc. v. Turner*, 662 F.2d 784, 785 n. 1 (D.C.Cir.1980), FOIA empowers courts to review withheld materials *in camera* where certain factors are present. 5 U.S.C. § 552(a)(4)(B). Given the history of this case, its complexity, and the sensitive nature of much of the information, those factors are present here. *See Environmental Protection Agency v. Mink*, 410 U.S. 73, 93–94, 93 S.Ct. 827, 838–839, 35 L.Ed.2d 119 (1973). The Court has accordingly had the benefit of *in camera* inspection of unredacted copies of the withheld documents for review in conjunction with the *in camera* and public affidavits.

The plaintiffs have directed numerous criticisms at the government's supporting documents, necessarily focusing on the sufficiency of the public *Vaughn* affidavits. Summarized, plaintiffs' criticisms focus principally upon an alleged lack of specificity in the FBI's affidavits regarding identification of particular documents and regarding the basis for withholding information under the various exemptions.

The plaintiffs' criticisms stress the method of analysis employed by the government in support of its exemption claims. That analysis generally entailed categorization of the withheld materials within certain exemptions and codification of the documents correspondingly. Plaintiffs contend that the categories developed by the FBI

are too broad and that the affidavits are accordingly too general to form the foundation for a reasoned judgment that each withholding determination was valid. Plaintiffs argue that the FBI's public affidavits in many instances merely parrot the language of a given exemption without making reference to the precise types of applicable material at issue in this case.

The bulk of plaintiffs' principal criticisms—lack of specificity and overbroad categorization—have been resolved to this Court's satisfaction through *in camera* inspection of the FBI's affidavits and the unredacted copies of the documents. Summary judgment or a directive ordering the filing of new affidavits are therefore unnecessary remedies for any such deficiencies perceived in the public affidavits in this case. *See Arieff v. U.S. Department of the Navy*, 712 F.2d at 1469–70; *Ellsberg v. Mitchell*, 709 F.2d 51, 63–64 (D.C.Cir. 1983) (submission of *in camera* materials sufficient to sustain government's assertion of privilege from discovery in constitutional tort action).

 However, there still remain several areas of concern raised by the plaintiffs which warrant discussion here. Many of the FBI's exemption claims relate to information which is particularly old. Where that information has been withheld under the personal privacy exemption claim, 5 U.S.C. §§ 552(b)(6) and (b)(7)(C), it is entirely possible that the privacy claims attaching to such information may have become diluted or waived over time, yet the FBI has not offered specifics to substantiate the validity of the exemption claims. Those exemptions contemplate a balancing between the agency interest in the continued withholding of intimate and highly personal information and the public interest, if any, in release. *Department of the Air Force v. Rose*, 425 U.S. 352, 371–73, 96 S.Ct. 1592, 1603–04, 48 L.Ed.2d 11 (1976); *Bast v. United States Department of Jus-*

*tice*, 665 F.2d 1251, 1254 (D.C.Cir.1981). Because of the detrimental consequences which the Jaffes have experienced and suffered through certain aspects of their association with the CIA and FBI, there arguably is a societal interest in helping them reestablish and restore their tarnished reputations. *Compare Department of the Air Force v. Rose*, 425 U.S. at 380–81, 96 S.Ct. at 1607–08 *with Columbia Packing Co. v. United States Department of Agriculture*, 563 F.2d 495, 499–500 (1st Cir. 1977). Nevertheless, the Court's *in camera* review of the material has demonstrated that third party personal privacy concerns apply to the information. *See infra* at 385–386.

A further troublesome aspect of the government's claims arises out of plaintiffs' allegations that information in the files which questions plaintiff Sam Jaffe's loyalty to the United States or his possible clandestine affiliation with a foreign government is information which was derived through subsequently discredited confidential sources. Although the Court is troubled with the possibility that plaintiffs' allegations may indeed be true, such claims cannot overcome the fact that an *in camera* inspection of the documents and affidavits shows that the information for which the (b)(7)(D) confidential source exemption is asserted has been substantiated by the government. *See infra* at 386–387. Though the Court reaches that conclusion with some reluctance especially in light of the passage of time and the questionable credibility of some of the confidential sources, the Court nonetheless determines that the affidavits are sufficient to support the claims of exemption pressed by the government.

B.

*The (b)(1) National Security Exemption*

The FBI has invoked the FOIA national security exemption[5] in this case as to a

---

5. The exemption provides in pertinent part that FOIA's disclosure provisions do not apply to materials which are:

(1)(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly

considerable portion of the withheld materials. The role of the Court in this instance has been described in detail by the District of Columbia Circuit.

[W]hat this Court must consider is "a *de novo* determination" of the propriety of the withholding, but in doing so the courts "must 'accord substantial weight'" to the Agency's determination.... Once satisfied that proper procedures have been followed and that the information logically falls into the exemption claimed, the courts "need not go further to test the expertise of the agency, or to question its veracity when nothing appears to raise the issue of good faith." ... Conversely, "summary judgment may be granted on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." ... The test is not whether the court personally agrees in full with the CIA's evaluation of the danger—rather, the issue is whether on the whole record the Agency's judgment objectively survives the test of reasonableness, good faith, specificity, and plausibility in this field of foreign intelligence in which the CIA is expert and given by Congress a special role.

*Gardels v. Central Intelligence Agency*, 689 F.2d 1100, 1104–1105 (D.C.Cir.1982) (citations omitted).

The documents at issue in this case were classified pursuant to Executive Order 12,065, 3 C.F.R. 1979,[6] which contained procedural and classification authority upon a showing that unauthorized disclosure reasonably could be expected to cause at least identifiable damage to the national security (§ 1–302).[7]

■ As previously described, *supra* at 381–382, a govermental agency may substantiate the adequacy of its FOIA exemption claims by proffering *in camera* affidavits and documents which demonstrate that material has been validly withheld. Analysis based upon public and *in camera* affidavits and documents is appropriate in the FOIA (b)(1) exemption context. *Gardels v. Central Intelligence Agency*, 689 F.2d at 1104–05; *Phillippi v. CIA*, 546 F.2d 1009, 113 (D.C.Cir.1976); S.Conf.Rep. 1200, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Admin.News 6290.

■ On the basis of this Court's examination of the several supporting affidavits [8] together with unredacted copies of the documents, the Court finds that the government has finally demonstrated that the material which it is currently withholding on (b)(1) national security grounds is indeed exempt from FOIA's disclosure requirements. The affidavits show that the procedural requirements of Executive Order 12,065 have been complied with and that the applicable categories of exempt classified material have been properly invoked. *See, e.g., Salisbury v. United States*, 690 F.2d at 972–73. Most importantly, the affidavits explain the specific harm which could result from disclosure. As the principal (b)(1) national security affidavit describes, disclosure of such information risks considerable damage to the national security:

The release of official documents by the United States which would evidence the existence of cooperative arrangements among the United States and friendly foreign governments, and the scope of activity of friendly foreign intelligence

classified pursuant to such Executive order,
...

5 U.S.C. § 552(b)(1).

**6.** Executive Order 12,065 was revoked by the President and replaced on April 12, 1982. *See* Executive Order 12,356, 3 C.F.R. 166, 178 (1982). The relevant provision for purposes of this case, however, is 12,065 which was in effect at the time these documents were assessed for classification. *See Military Audit Project v. Ca-*

*sey*, 656 F.2d 724, 737 (D.C.Cir.1981); *Baez v. U.S. Department of Justice*, 647 F.2d 1328, 1334 (D.C.Cir.1980).

**7.** Sections 1–501 to 1–506, for example, set forth the requirements for identification, marking, and processing classified documents.

**8.** *See* Eighth Kellen Affidavit at ¶ 3; First Dube Affidavit at ¶ 18; Yeates Affidavit at ¶¶ 9, 11.

and security services could seriously strain relations between governments. In addition, this action could sharply curtail or eliminate such cooperation between the United States and friendly intelligence and internal security services, resulting in a serious negative impact on both United States intelligence collection and internal security capabilities. The release of information which constitutes an official acknowledgment of the existence of intelligence or internal security liaison relationships with the United States could cause embarrassment and harm to the government involved and could cause disruption of its diplomatic relations with other governments.

Eighth Kellen Affidavit, Appendix A, at 5.[9]

Although the plaintiffs complain that the government's efforts to substantiate its (b)(1) claims are inadequate for a number of reasons, their complaints are necessarily limited to the clarity and specificity of the public affidavits.[10] As discussed generally, those concerns are less compelling in the face of lengthy *in camera* submissions and the Court concludes that its *in camera* review bears out the government's (b)(1) national security claim. In particular, the Court has found that while some of the potential harms to national security listed in the affidavits may not flow from release of a given portion of information, in virtually every instance at least some of those harms, if not all, would occur upon release of the material.

### The (b)(3) Statutory Exemption

In this case, the government has also invoked FOIA exemption (b)(3) which authorizes the government to withhold records or information appearing in documents that are

specifically exempted from disclosure by statute ... provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B)

establishes particular criteria for withholding or refers to particular types of matters to be withheld.

5 U.S.C. § 552(b)(3). The government has withheld information from categories of material pursuant to four corresponding statutory provisions: Section 102(d)(3) of the National Security Act of 1947, 50 U.S.C. § 403(d)(3); Section 7 of the Central Intelligence Act of 1949, 50 U.S.C. § 403g (CIA Act); Section 6 of Public Law 86–36, 50 U.S.C. § 402 note; and Section 222(f) of the Immigration and Nationality Act, 8 U.S.C. § 1202(f). All of the statutes qualify as exempting statutes under the (b)(3) exemption. The Court considers each in turn.

 Section 102(d)(3) of the National Security Act protects against "unauthorized disclosure" of information pertaining to "intelligence sources and methods," 50 U.S.C. § 403(d)(3), establishes withholding criteria and refers to types of materials to be withheld. Section 102(d)(3) therefore qualifies for treatment under part (B) of FOIA exemption (b)(3). *Military Audit Project v. Casey,* 656 F.2d 724, 736 n. 39 (D.C.Cir.1981); *Goland v. CIA,* 607 F.2d 339, 350 (D.C.Cir.1978), *cert. denied,* 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980). Section 102(d)(3) litigation focuses upon the precision with which agency affidavits indicate that withheld material falls within the parameters of that provision as set forth by the Court of Appeals for this Circuit:

[T]o protect the underlying concerns of Congress, Section 403(d)(3) must be interpreted in functional terms: an "intelligence source" is a person or institution that provides, has provided, or has been engaged to provide the CIA with information of a kind the Agency needs to perform its intelligence function effectively, yet could not reasonably expect to obtain without guaranteeing the confidentiality of those who provide it.

---

9. *See also,* Yeates Affidavit at ¶ 7; Machak Affidavit Exhibit D; Second Dube Affidavit at ¶ 11.

10. *See supra* at 381–382. Plaintiffs have detailed their contentions as to the deficiencies in the affidavits in an Appendix attached to their summary judgment motion of November 1982.

*Sims v. Central Intelligence Agency,* 642 F.2d 562, 571 (D.C.Cir.1980). In this case, the CIA and the National Security Agency have demonstrated the proper application of the provisions to information such as names or identities of CIA intelligence sources and materials derived from foreign intelligence as well as from NSA intercepts.[11] *See Goland v. CIA,* 607 F.2d at 351.

The government has similarly satisfied the Court, through affidavits and *in camera* materials,[12] that it properly invoked Section 7 of the CIA Act which is related to section 102(d)(3) and provides that:

> [T]he Agency shall be exempted from the provisions ... of any ... law which require[s] the publication or disclosure of the organization, functions, names, official titles, salaries, or numbers of personnel employed by the Agency.

50 U.S.C. § 403g; *see Goland v. CIA,* 607 F.2d at 350; *Weissman v. CIA,* 565 F.2d 692, 694 (D.C.Cir.1977).

The government has also relied upon Section 6 of Public Law 86–36 which precludes "the disclosure of the organization or any function of the National Security Agency, or any information with respect to the activities thereof...." 50 U.S.C. § 402 note. Public Law 86–36 meets the criteria for exemption under 552(b)(3). *Moon v. CIA,* 514 F.Supp. 836, 839 (S.D.N. Y.1981). The government's reliance upon that provision in support of withholding intelligence information derived through NSA electromagnetic intercepts has been substantiated by this Court's review.[13]

The final (b)(3) exemption claim involves confidential visa information concerning certain third parties which has been withheld at the request of the State Department[14] pursuant to Section 222(f) of the Immigration and Nationality Act, 8 U.S.C. § 1202(f). That provision qualifies as a withholding provision under exemption (b)(3)(A), *Holy Spirit Association for the Unification of World Christianity, Inc. v. United States Department of State,* 526 F.Supp. 1022, 1030–31 (S.D.N.Y.1981), and this Court's review has demonstrated that the government's claim is justified. Since the Court is satisfied that section 222(f) has been properly invoked, it need not reach the exemption (b)(6) privacy claim which the government has also asserted as to the visa information.

### The (b)(6) Privacy Exemption

The government has also withheld material pursuant to exemption (b)(6) which protects from disclosure

> personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy.

5 U.S.C. § 552(b)(6). The Court is satisfied that the government has applied the exemption in a circumspect manner and properly determined "whether the information sought is to be found in personnel, medical or similar files, and if so, whether its release would constitute a 'clearly unwarranted invasion of personal privacy,'" while taking into consideration the interest of the public in disclosure. *Department of the Air Force v. Rose,* 425 U.S. at 371–73, 96 S.Ct. at 1603–05.[15]

The only question which arises in connection with the government's (b)(6) exemption claim is, as discussed earlier, *supra* at 382, the continuing viability of the claim given the fact that much of the information relates to matters which may have experienced a dilution in sensitivity due to the passage of time. While there may be less reason to acknowledge the continuing rele-

---

11. Yeates Affidavit at ¶ 8; First Dube Affidavit at ¶ 13; Ninth Schweickhardt Affidavit at ¶ 16.

12. First Dube Affidavit at ¶ 16; Ninth Schweickhardt Affidavit at ¶ 16.

13. Yeates Affidavit at ¶ 5a; Ninth Schweickhardt Affidavit at ¶ 17.

14. Ainsworth Affidavit at ¶ 4; Ninth Schweickhardt Affidavit at ¶ 18.

15. Ainsworth Affidavit at ¶ 14; Ninth Schweickhardt Affidavit at ¶ 18.

vance of a (b)(6) exemption claim as opposed to some of the other exemptions as the years pass, the Court concludes that the overall interest embodied in (b)(6) is nevertheless applicable given the nature of the information and the fact that it is part of a file which has been classified and subsequently reviewed and reclassified in large portions at periodic intervals.

*The (b)(7) Investigatory Records Exemptions*

The (b)(7) investigatory records exemptions pertain to certain categories of information appearing in records which have been compiled for civil and criminal law enforcement purposes. *See* S.Conf.Rep. No. 1200, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Ad.News 6291; *Soucie v. David,* 448 F.2d 1067, 1078 n. 45 (D.C.Cir.1971). Rather than depending upon how the material was obtained or the type of document in which it is contained, the exempt character of (b)(7) information turns on the nature of the material itself. In this instance three categories of material falling within exemption (b)(7) are relevant. Those provisions authorize the withholding of materials that constitute

> investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would ... (C) constitute an unwarranted invasion of personal privacy, (D) disclose the identity of a confidential source and, in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, confidential information furnished only by the confidential source, (E) disclose investigative techniques and procedures....

5 U.S.C. § 552(b)(7).

#### (i) The (b)(7)(C) Personal Privacy Exemption

Like the (b)(6) personal privacy exemption, (b)(7)(C) requires a balancing of the subject's personal privacy interest and the extent of the potential invasion with the public interest in disclosure. *Supra* at 382, 385–386. The (b)(7)(C) exemption applies in the investigatory records context. In contrast to the (b)(6) balancing analysis, however, the investigatory records privacy exemption provides for the withholding of material where release would constitute an "unwarrahted" rather than a "clearly unwarranted" invasion of privacy. *Bast v. United States Department of Justice,* 665 F.2d 1251, 1254 (D.C. Cir.1981).

 The government has properly withheld material pursuant to this exemption which pertains to third parties who are the subject of other investigations as well as information regarding government personnel including agents.[16] That type of material falls within the scope of the (b)(7)(C) exemption and a review of the actual documents indicates that it was properly applied.

#### (ii) The (b)(7)(D) Confidential Source Exemption

 For the purposes of encouraging the cooperation of confidential sources, exemption (b)(7)(D) protects against the disclosure of materials in investigatory records which would reveal the identities of confidential sources of information. Unlike the balancing analysis which applies to the (b)(6) and (b)(7)(C) exemptions, the confidential source exemption merely requires a showing that release of the material would identify a confidential source, *Sands v. Murphy,* 633 F.2d 968, 971 (1st Cir.1980), and that the source provided the information "under an express assurance of confidentiality or in circumstances from which an assurance could reasonably be inferred." *Lesar v. United States Department of Justice,* 636 F.2d 472, 490 (D.C.Cir. 1980), *quoting* Conf.Rep. No. 1200, 93d Cong., 2d Sess., *reprinted in* 1974 U.S. Code Cong. & Ad.News 6291. The govern-

---

**16.** Ninth Schweickhardt Affidavit at ¶¶ 21–24, 25–26, 27; Machak Affidavit at Appendix D.

ment affidavits [17] have shown just that and this Court's *in camera* review has further substantiated the government's claims.

### (iii) The (b)(7)(E) Investigative Techniques Exemption

■ The final investigative records exemption advanced by the government pertains to the withholding of material which describes secret investigative techniques and procedures. The theory underlying this exemption is that disclosure of such information could complicate the task of investigative agencies because potential violators of the law could familiarize themselves with the policies which govern law enforcement methods and frustrate investigations. *See Stokes v. Brennan,* 476 F.2d 699, 701–702 (5th Cir.1973). Thus, the exemption extends to information regarding obscure or secret techniques. *See Shaver v. Bell,* 433 F.Supp. 438, 441 (N.D.Ga.1977). The exemption does not encompass, however, ordinary manuals or procedures unless they include confidential details of law enforcement programs. *See Stokes v. Brennan,* 476 F.2d at 702.

■ In this proceeding, the government, through the Department of State, has invoked the (b)(7)(E) exemption as to portions of some of the disputed documents which assertedly relate to law enforcement procedures not known to the public. The government's supporting affidavit [18] and the Court's *in camera* review bear out the defendant's (b)(7)(E) exemption claim. *See Kanter v. Department of State,* 479 F.Supp. 921, 928 (D.D.C.1979) *(in camera* inspection by the court indicated that Exemption (b)(7)(E) applied).

### THE AWARD OF ATTORNEY'S FEES

Because of the circumstances which have persisted throughout this litigation and because the plaintiffs' pursuit of the case has led to the release of considerable amounts of material which was withheld without reasonable justification, the Court con-

cludes that an award of fees and costs is appropriate.

■ The relevant statutory provision, 5 U.S.C. § 552(a)(4)(F), requires that, as a prerequisite to such an award, the plaintiffs' demonstrate that they substantially prevailed. *Ginter v. Internal Revenue Service,* 648 F.2d 469 (8th Cir.1981). When such a showing has been made, the Court, in its discretion, may assess reasonable fees and costs. *Cox v. United States Department of Justice,* 601 F.2d 1 (D.C. Cir.1979). The Court is satisfied that the Jaffes meet the "substantially prevailed" requirement. Indeed, through their continued efforts they have received many documents which they otherwise would not have obtained. *See Cazalas v. United States Department of Justice,* 660 F.2d 612 (5th Cir.1981). The plaintiffs' success is due principally to their decision to pursue this case to court and their persistence. Moreover, the other relevant criteria which should be considered compel an award: public benefit, commercial benefit to the plaintiffs, the nature of plaintiffs' interest, the reasonableness of the government's withholding. *Cuneo v. Rumsfeld,* 553 F.2d 1360 (D.C.Cir.1977).

### CONCLUSION

In light of the foregoing, the Court concludes that the defendants' motion for summary judgment should be granted and the plaintiffs' motion for summary judgment should be denied. The plaintiffs are directed to file a memorandum addressing the attorneys' fees and court costs issue by November 30, 1983.

---

**17.** Ninth Schweickhardt Affidavit at ¶¶ 30–47.

**18.** Garrett Affidavit at ¶ 3 and Exhibit D.