Richard L. BAST, Appellant,

v.

U. S. DEPARTMENT OF JUSTICE.

Richard L. BAST, Appellant,

v.

FEDERAL BUREAU OF
INVESTIGATION.

Nos. 79–2039, 80–1050.

United States Court of Appeals,
District of Columbia Circuit.

Argued May 12, 1981.

Decided Sept. 10, 1981.

Robert J. Flynn with whom Benjamin B. Brown, Washington, D. C., was on the brief, for appellants in Appeal Nos. 79–2039 and 80–1050.

Richard L. Bast Washington, D. C., entered an appearance in Appeal Nos. 79–2039 and 80–1050.

Mary A. McReynolds, Washington, D. C., with whom Leonard Schaitman, Washington, D. C., was on the brief, for appellee in Appeal Nos. 79–2039 and 80–1050.

Michael Jay Singer, Washington, D. C., entered an appearance in Appeal Nos. 79–2039 and 80–1050.

Before LUMBARD*, Senior Circuit Judge for the United States Court of Appeals for the Second Circuit and, JOHN R. BROWN** and CHARLES CLARK**, Circuit Judges, of the United States Court of Appeals for the Fifth Circuit.

Opinion for the Court filed by Circuit Judge CLARK.

CLARK, Circuit Judge:

Richard L. Bast asks this court to order the disclosure of twelve documents withheld from Bast by the Department of Justice and the Federal Bureau of Investigation. After an *in camera* review of the documents, we find that, with one exception, all are exempt from disclosure under exemption 7(C) of the Freedom of Information Act (FOIA), 5 U.S.C. § 552(b)(7)(C). One withheld portion of document twelve qualifies for no exemption and must be disclosed. The judgment of the district court is affirmed in part and reversed in part.

I.

This case arises from a minor incident which occurred in the courtroom of United States District Judge John H. Pratt. In early 1978, Judge Pratt tried an FOIA case involving the Serbian Eastern Orthodox Diocese. Bast, a private investigator with a considerable FOIA practice, was present during the hearing in his capacity as a consultant for the Diocese. During the hearing, Bast and Judge Pratt exchanged views in open court as to whether Bast's company, Information Acquisition Corporation, was "a creature" of columnist Jack Anderson. The Diocese subsequently ordered a transcript of the hearing from the court reporter, Dennis Bossard, but found that Bast's exchange with Judge Pratt was not recorded. Bast charges that Judge Pratt and his secretary, Kathleen McTiernan, improperly induced Bossard to delete the discussion from the transcript.[1]

Bast informed the Justice Department and the FBI of his suspicions, and suggested that Judge Pratt should be prosecuted for obstruction of justice.[2] The agencies investigated the allegations, but brought no charges against Judge Pratt. In the belief that the failure to bring charges was an abuse of prosecutorial discretion, Bast filed an FOIA request with the Justice Department and the FBI, seeking all documents relating to the investigation of Judge Pratt. When the agencies failed to respond within 10 days, *see* 5 U.S.C. § 552(a)(6)(A)(i), Bast filed suit in the district court.

■ Six of Bast's seven requests to the agencies asked for information related spe-

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

** Sitting by designation pursuant to 28 U.S.C. § 291(a).

1. Bast alleges that the following conversation took place immediately after the hearing:

    MS. McTIERNAN: Denny, the colloquy between the judge and Mr. Bast is off the record.

    MR. BOSSARD: Says who?

    MS. McTIERNAN: Judge Pratt.

    MR. BOSSARD: [T]hat [is] good enough for me, however, they saw me take it down. They may want that particular portion of the transcript.

    MS. McTIERNAN: Well, you can tear up your notes.

    MR. BOSSARD: Are you crazy?

    MS. McTIERNAN: Well, you can lie and say you didn't take it down.

    MR. BOSSARD: I couldn't do that either.

    Ms. McTIERNAN: Verify it with the judge.

    Bast's clients filed recusal motions against Judge Pratt in the *Serbian Eastern Orthodox Diocese* case. Judge Pratt denied the motions. Ultimately, summary judgment was entered for the Government.

2. Bast charged that Judge Pratt violated 18 U.S.C. section 1506 (1966). Section 1506 prescribes criminal penalties for anyone who "alters, falsifies, or otherwise avoids any record . . . in any court of the United States, whereby any judgment is reversed, made void, or does not take effect."

cifically to the transcript alteration incident. Bast's seventh request, however, sought "[a]ny other records relating to Judge Pratt and/or Ms. McTiernan, wherein they are named or otherwise alluded to." During oral argument before this court, Bast claimed for the first time in these proceedings that the agencies had failed to respond to his seventh request. We hold that Bast has waived this issue by failing to raise it in the court below. *See Kassman v. American University*, 178 U.S.App.D.C. 263, 266, 546 F.2d 1029, 1032 (1976).

The agencies ultimately identified some 1,050 pages of relevant documents, and voluntarily released to Bast approximately 600 unedited pages. Additional pages were released with partial deletions. The remaining pages were withheld under FOIA exemptions 5, 6, and 7(C), 5 U.S.C. §§ 552(b)(5), (6), (7)(C). Judge Dudley J. Bonsal, of the Southern District of New York, was designated to sit in the district court. He conducted an *in camera* review of each document withheld by the agencies. He ordered minor additional disclosures, but approved the retention, in whole or in part, of twelve documents comprising approximately 70 pages. These documents are the subject of the present appeal.

## II.

The Freedom of Information Act requires disclosure upon request of all information held by the government, unless the information falls within one of nine enumerated exemptions. *E. g., NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 136, 95 S.Ct. 1504, 1509, 44 L.Ed.2d 29, 38 (1975). The operation of this broad approach to public disclosure has proven unexpectedly expensive.[3] In today's world of strict budgeting, such expense could impair the performance of other governmental functions. Nevertheless, the importance attributed by Congress to open government is clear, and the Act is designed to resolve most doubts in favor of public disclosure. *See Environmental Protection Agency v. Mink*, 410 U.S. 73, 80, 93 S.Ct. 827, 832, 35 L.Ed.2d 119, 128 (1973).

The agencies assert that all twelve documents at issue in this case are within the 7(C) exemption, 5 U.S.C. § 552(b)(7)(C).[4] Exemption 7(C) permits an agency to withhold "investigatory records compiled for law enforcement purposes" when disclosure of the records would "constitute an unwarranted invasion of personal privacy."[5]

■ Bast argues that the twelve documents in this case are not "investigatory records." This objection is insubstantial. All twelve documents were created during the investigation into Bast's charges of obstruction of justice. Bast's argument that documents compiled during the course of such an investigation lose their status as

**3.** In 1978, the Department of Justice alone spent approximately $13 million to comply with FOIA requests. Koch & Rubin, *A Proposal for a Comprehensive Restructuring of the Public Information System*, 1979 Duke L.J. 1, 5 n.10 (1979). This expense is all the more striking given the original intention of Congress to fund the FOIA program out of existing operating budgets. *Id.* at 6 n.11.

**4.** The agencies also argue that the twelve documents are exempt under exemption 6, 5 U.S.C. section 552(b)(6), and that six documents are exempt under exemption 5, 5 U.S.C. section 552(b)(5). Our disposition of the case, however, makes unnecessary any extended discussion of exemptions 5 and 6. *See infra* at 10–11.

**5.** The full text of exemption 7 provides that the following documents are exempt from disclosure:

investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would (A) interfere with enforcement proceedings, (B) deprive a person of a right to a fair trial or an impartial adjudication, (C) constitute an unwarranted invasion of personal privacy, (D) disclose the identity of a confidential source and, in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, confidential information furnished only by the confidential source, (E) disclose investigative techniques and procedures, or (F) endanger the life or physical safety of law enforcement personnel.

investigatory records when the Government decides not to prosecute is unsupported. To the contrary, it is well settled that the agency's purpose in compiling the documents, not the ultimate use of the documents, determines whether they are within the exemption 7 definition. *See, e. g., Rural Housing Alliance v. Department of Agriculture,* 162 U.S.App.D.C. 122, 129–130, 498 F.2d 73, 80–81 (1974). The twelve documents are "investigatory records compiled for law enforcement purposes."

Bast also argues that the decision not to prosecute Judge Pratt renders the 7(C) exemption inapplicable because the only purpose of exemption 7 is to protect the Government's case in court. This argument rests on a misunderstanding of cases such as *Coastal States Gas Corp. v. Department of Energy,* 199 U.S.App.D.C. 272, 617 F.2d 854 (1980), and *Abrahamson Chrysler-Plymouth, Inc. v. NLRB,* 561 F.2d 63 (7th Cir. 1977). These cases hold that *exemption 7(A),* which exempts records when disclosure would "interfere with enforcement proceedings," does not apply when no proceeding is contemplated. They do not hold that protecting enforcement proceedings is the only purpose of exemption 7, or that *exemption 7(C)* is limited to enforcement proceedings.

■ The remaining inquiry under exemption 7(C) is whether disclosure of the twelve documents would entail "an unwarranted invasion of personal privacy." This inquiry calls for a balancing of the public interest in disclosing information against the individual's interest in personal privacy. *See, e. g., Common Cause v. National Archives and Records Service,* 202 U.S.App.D.C. 179, 182, 628 F.2d 179, 182 (1980); *cf. Department of Air Force v. Rose,* 425 U.S. 352, 372 96 S.Ct. 1592, 1604, 48 L.Ed.2d 11, 28 (1976) (balancing test used under exemption 6). Unlike exemption 6, which permits nondisclosure only when a document portends a *"clearly* unwarranted invasion of personal privacy," exemption 7(C) does not require a balance tilted emphatically in favor of disclosure. *See Department of Air Force v. Rose, supra,* 425 U.S. at 378 n.16, 96 S.Ct. at 1607

n.16, 48 L.Ed.2d at 31 n.16 (1976); *compare Getman v. NLRB,* 146 U.S.App.D.C. 209, 213, 450 F.2d 670, 674 (1971) (exemption 6 "instructs the court to tilt the balance in favor of disclosure"). Instead, the 7(C) exemption recognizes the stigma potentially associated with law enforcement investigations and affords broader privacy rights to suspects, witnesses, and investigators. *See Fund for Constitutional Government v. National Archives and Records Service,* 211 U.S.App.D.C. 267, 273, 656 F.2d 856, 862 (1981). Nevertheless, disclosure of information remains an important consideration under exemption 7(C). It cannot be outweighed on a per se basis by any privacy interest. The balance must be struck in each particular case, weighing the specific privacy invasion against the value of disclosing a given document. *See Common Cause v. National Archives and Records Service, supra,* 202 U.S.App.D.C. at 184, 628 F.2d at 184; *Congressional News Syndicate v. Department of Justice,* 438 F.Supp. 538, 543 (D.D.C.1977).

The privacy interests implicated by the documents in this case are similar to those which have justified nondisclosure in previous cases. One document, a letter from a physician, contains medical information of a personal nature. The privacy interest in such information is well recognized, even under the stringent standard of exemption 6. *See, e. g., Rural Housing Alliance v. Department of Agriculture, supra,* 162 U.S.App.D.C. at 124 n.4, 126, 498 F.2d at 75 n.4, 77. Other documents reveal allegations of wrongdoing by suspects who never were prosecuted or the names of third parties who had some role in an investigation. Such documents also implicate privacy rights. *E. g., Fund for Constitutional Government v. National Archives and Records Service, supra,* at 865–866; *Nix v. United States,* 572 F.2d 998, 1006 (4th Cir. 1978).

■ Bast discounts the privacy interests at stake in two ways. First, he argues that the privacy rights of public employees are limited by the right of the public to monitor its government. It is well established, how-

ever, that government officials do not surrender all rights to personal privacy when they accept a public appointment. *See Lesar v. Department of Justice,* 204 U.S.App. D.C. 200, 215, 636 F.2d 472, 487 (1980). While an individual's official position may enter the 7(C) balance, *Common Cause v. National Archives and Records Service, supra,* 202 U.S.App.D.C. at 184, 628 F.2d at 184, it does not determine, of its own accord, that the privacy interest is outweighed. Moreover, many of the individuals who figure in the twelve documents are not public officials.

Bast's second contention is that the hope of protecting privacy already is forlorn. He notes that the transcript alteration incident already has received substantial public attention, and he argues that this attention destroys, once and for all, any personal privacy interest in the related documents. In this case, however, previous publicity consisted of little more than journalistic speculation. While such publicity may well invade personal privacy, its accuracy is not established. By contrast, the information revealed in the twelve agency documents carries the imprimatur of an official investigation. The authoritative nature of such findings threatens much greater damage to an individual's reputation than newspaper articles or editorial columns. For this reason, publicity in the popular media cannot vitiate the FOIA privacy exemption for official information. Furthermore, renewed publicity brings with it a renewed invasion of privacy. The renewed intrusion is subject, in its own right, to FOIA protection. All twelve documents implicate legitimate privacy interests under the 7(C) exemption.

On the other side of the balance, Bast identifies two public interests which, in his view, would be served by disclosure of the twelve documents he seeks. First, Bast argues that public confidence in the Justice Department will suffer if its decision not to prosecute Judge Pratt is denied a full public airing. According to Bast, only disclosure of the documents will determine whether the Department properly exercised its prosecutorial discretion. Second, Bast argues that public confidence in the judiciary is at stake. He contends that the transcript alteration incident impugns the integrity of the judicial system, and that Judge Pratt's comments to FBI investigators raise questions about the judge's impartiality. While these are important public interests, we note that they have been served to a large extent by the substantial release of information already made in this case. Thus, it is the incremental advantage to the public of releasing the undisclosed portions of the twelve documents which must be weighed against the invasion of personal privacy.

We have examined *in camera* each of the twelve documents withheld from Bast. This review persuades us that, as to all but one portion of one document, the privacy interest far outweighs the incremental benefit to the public. The withheld information in the twelve documents consists of minor details of the FBI and Justice Department investigations. These details add little to a general understanding of the investigation, and their utility to a legitimate public inquiry is minimal. By contrast, disclosure of this information would realize the full invasion of privacy outlined above. The district court correctly determined that the agencies acted properly in excluding all or portions of these twelve documents from the other information released to Bast.

The unique exception among the documents is a three-sentence passage which formed part of the material deleted from a three-page FBI report. In this passage, an FBI agent attributes to Judge Pratt remarks which could be interpreted to indicate that the judge was biased in favor of the government and the FBI. It appears at least equally likely that the attributed remarks were designed to reassure the agents that the judge had not been offended by their previous questions or procedures. Nevertheless, even the possibility that Judge Pratt could have intended to reveal a bias raises a significant issue of public concern. Judicial impartiality is essential to the integrity of the nation's courts. If the agent incorrectly attributed the comment to

**1256**

the judge, or if the comment was intended to assuage feelings rather than to influence the investigation, that must be explained. It cannot be assumed. The public importance of judicial impartiality outweighs the privacy interest in this case. The passage should not have been exempted from disclosure under exemption 7(C).

The agencies' brief raises the possibility that the passage is exempt under exemptions 5 and 6. The passage has nothing to do with attorney work product, however, and thus is not within exemption 5. Moreover, because disclosure of the passage does not constitute an "unwarranted" invasion of privacy under exemption 7(C), it fails *a fortiori* to meet the "clearly unwarranted" standard of exemption 6. Thus, the passage is not exempt from disclosure. We hold that the agencies must disclose the following portion of document twelve, the memorandum of February 16, 1978, from Howard B. Apple to the Commanding Agent of the FBI Washington Field Office.

Page 2: —the first sentence of the first paragraph
—the second and third sentences of the second paragraph

In all other respects, the judgment of the district court is affirmed.

*Affirmed in part and reversed in part.*