Neil J. COHEN, Plaintiff,

v.

ENVIRONMENTAL PROTECTION
AGENCY, Defendant.

Civ. A. No. 82–0380.

United States District Court,
District of Columbia.

June 28, 1983.

Cornish F. Hitchcock, Washington, D.C., for plaintiff.

George P. Williams, Charles F. Flynn, Asst. U.S. Attys., and Carl Strass, Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM OPINION

BRYANT, District Judge.

This action is before the court on the parties' cross-motions for summary judgment. The sole issue in this Freedom of Information Act (FOIA) case is whether the names of recipients of Environmental Protection Agency (EPA) notice letters, sent pursuant to § 103 of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), 42 U.S.C. § 9603(c), are exempt from disclosure under Exemptions 7(A), 7(C) and 5 of FOIA. For the reasons stated below, the court finds that the information must be disclosed.

*Background*

EPA is responsible for the enforcement of CERCLA, 42 U.S.C. §§ 9601–9657, and its predecessor legislation, the Resource Conservation and Recovery Act (RCRA), 42 U.S.C. §§ 6901–6987. Congress passed CERCLA in 1980 to augment RCRA and provide EPA with additional tools to combat hazardous waste pollution. CERCLA's Hazardous Substance Response Fund or "Superfund" helps pay for cleanup programs, particularly at abandoned disposal sites. 42 U.S.C. § 9604(a)(1). However, EPA must first establish that remedial action would not be adequately undertaken "by the owner or operator of the vessel or facility from which the release or threat of release emanates, or by any other responsible party." *Id.*

Responsible parties are liable for "all costs of removal or remedial action incurred by the United States Government or a State" including "necessary costs of response incurred by any other person" and "damages for injury to, destruction of, or loss of natural resources, including the reasonable cost of assessing such injury." 42 U.S.C. § 9607(a)(4).

Since Superfund monies are limited, EPA attempts to conserve them for abandoned or "orphaned" hazardous waste disposal sites. Kurent affidavit at 8.[1] The EPA attempts to identify responsible parties who, according to the statutory scheme, are directly liable for the costs of cleanup. Section 104 of CERCLA authorizes EPA to gain compliance through voluntary programs. 42 U.S.C. § 9604. Section 106(a) allows EPA the option of filing suit or issuing administrative orders to compel a responsible party to abate hazardous activities. 42 U.S.C. § 9606(a). Wilful violations of EPA orders can result in significant monetary penalties including punitive damages of up to three times the cost of cleanup. 42 U.S.C. §§ 9606(b), 9607(c).

Before October 1, 1981, EPA sent notice letters to 142 individuals, corporations and other entities who the agency had reason to believe were potentially liable for the release or threatened release of hazardous substances under CERCLA.[2] The Depart-

---

1. Edward A. Kurent is the Acting Associate Enforcement Counsel at the U.S. EPA. He has been involved with hazardous waste enforcement since 1979. His affidavit is the defendant's primary evidence in support of its summary judgment motion.

2. The agency has sent an additional 1,100 letters since the plaintiff initiated his FOIA request,

ment of Justice sent 35 of the original letters on behalf of EPA, addressing six of these letters to named defendants in federal enforcement litigation. These six names were subsequently released to the plaintiff. The additional 136 letters, including the entire body of 107 letters sent directly by the EPA, do not concern parties presently involved in litigation. Kurent affidavit at 5.

EPA notice letters state, generally, that the recipient is potentially responsible for the threatened or actual release of hazardous substances into the environment and may be liable for the costs of remedial cleanup. Some of the notice letters specifically describe the necessary corrective measure the EPA believes necessary to achieve compliance. All of the letters invite the recipient to open discussion with the EPA about developing voluntary cleanup programs. Kurent affidavit at 6.

EPA released the substance of the notice letters to the plaintiff, but claims the identities of the individuals, corporations and other recipients are exempt from disclosure under FOIA Exemption 7(A), 5 U.S.C. § 552(b)(7)(A). In addition, in the case of 33 recipients who are individuals, nondisclosure is permitted under Exemption 7(C), 5 U.S.C. § 552(b)(7)(C). Finally, EPA contends that the list of recipients is entirely exempt from disclosure as an inter-agency memorandum under FOIA Exemption 5, 5 U.S.C. § 552(b)(5).

*Exemption 7(A)*

■ The underlying congressional objective in enacting FOIA was to facilitate access and "broad disclosure" of government records. *FBI v. Abramson*, 456 U.S. 615, 621, 102 S.Ct. 2054, 2059, 72 L.Ed.2d 376 (1982); *EPA v. Mink*, 410 U.S. 73, 80, 93 S.Ct. 827, 832, 35 L.Ed.2d 119 (1973). It is well-settled law that FOIA exemptions are to be narrowly construed. *FBI v. Abram-*

*son, supra* at 630, 102 S.Ct. at 2063; *Department of Air Force v. Rose*, 425 U.S. 352, 361, 96 S.Ct. 1592, 1599, 48 L.Ed.2d 11 (1976). Exemption 7 provides for nondisclosure of investigatory records specifically devoted to government enforcement activities. The present language of Exemption 7 is the result of 1978 amendments to FOIA, where Congress reacted to a series of court decisions granting an almost blanket exemption for investigatory documents. *See, e.g., National Policy Review v. Weinberger*, 502 F.2d 370 (D.C.Cir.1974); *Rural Housing Alliance v. United States Department of Agriculture*, 498 F.2d 73 (D.C.Cir.1974). In narrowing the scope of the exemption, Congress placed a significant burden on the government.

■ Exemption 7(A) of FOIA exempts from disclosure "investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would ... interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). A two-pronged analysis must be applied to an Exemption 7(A) claim. *Pratt v. Webster*, 673 F.2d 408 (D.C.Cir.1982); *Campbell v. HHS*, 682 F.2d 256 (D.C.Cir.1982). The threshold issue is whether the records are "investigatory" and "compiled for law enforcement purposes." Once this is determined, the court must examine whether release of the records would actually "interfere" with the agency's law enforcement function by resulting in concrete adverse consequences. *Campbell v. HHS, supra*.

■ The documents at issue appear to meet the threshold test. Although they were not developed solely for investigatory purposes, the notice letters are instrumental in the agency's efforts to determine "responsible parties and develop effective cleanup programs." Kurent affidavit at 10.[3] The notice letters assist EPA in meet-

---

however, the letters sent after October 1981 are not at issue in this lawsuit.

**3.** *See, also,* Rikleen, Negotiating Superfund Settlement Agreements, 10 Boston College Environmental Law Review 697, 703 (1983).

The plaintiff only mildly counters the defendant's argument that the letters are the first investigatory stage of an overall enforcement scheme. The plaintiff states "[w]hile there is thus a question on this point [whether the records are investigatory] the court need not re-

ing its dual goals of cleaning up hazardous waste disposal sites and conserving the finite funds provided by Congress. The agency achieves these goals primarily by negotiating settlements with responsible parties after preliminary investigations indicate the recipients of notice letters were involved with hazardous waste disposal. Kurent affidavit at 8. Thus, EPA has provided sufficient evidence to establish that the notice letters are an early stage of the agency's investigatory activities, leading to enforcement of CERCLA.

The second prong of an Exemption 7(A) claim requires that the government establish that disclosure would "interfere with enforcement proceedings." We find that the government has not adequately carried its burden.

The government's argument rests primarily on an allegation that disclosure of the identities of corporations and individuals who are potential responsible parties would reduce the cooperation of these parties in voluntary cleanup programs. EPA alleges that disclosure of identities would result in "substantial negative impact" for three major reasons.

First, the agency's efforts at gaining voluntary compliance would be undermined because responsible parties often agree to negotiate with the government to avoid negative publicity. Kurent affidavit at 14–15. The plaintiff counters this argument by alleging that disclosure of the identities of potential responsible parties could have the opposite effect. Public opinion resulting from identification would assist EPA in developing voluntary programs by pressuring responsible parties to undertake voluntary cleanup. In addition, the plaintiff contends that disclosure could not harm enforcement efforts, since many of the responsible parties are already identified in a congressional subcommittee report.[4] Furthermore, there is an inconsistency in the government's claims. The names of par-

ties involved in federal enforcement actions have been disclosed by EPA, but the government does not argue that the disclosure will impede its efforts to settle these cases before massive resources are expended in litigation. Most importantly, the plaintiff argues that EPA has failed to meet its burden that the agency

> must show, by more than conclusory statement, how the particular kinds of investigatory records requested would interfere with a pending enforcement proceeding. [*Campbell v. HHS, supra* at 259.]

The one affidavit supplied by the government provided no more than the "conclusory statement[s]" which our circuit has held inadequate.

In *Campbell v. HHS, supra,* the agency had subpoenaed records from a company under investigation and the plaintiff filed a FOIA request to obtain the records. A key aspect of the court's holding in favor of disclosure focused on the fact that the records were already in the possession of the party under investigation and, therefore, the government's interest could not be impaired. Similarly, in this case, the records are available to the identified responsible parties and the agency. The notice letters involve no confidential information and EPA has not substantiated its fear that negative publicity would impair enforcement efforts with sufficient facts or concrete evidence to override the presumption of disclosure.

Second, the government alleges that premature disclosure would undermine the government's control over the voluntary cleanup programs by destroying the secrecy necessary to effective negotiation and by permitting the potential responsible parties to collude and interrupt the timing and course of EPA's enforcement efforts. Again, the government has provided no more than conclusory statements about the

---

solve it, but should instead focus on the second prong of the exemption, the alleged interference with EPA's enforcement efforts." Plaintiff's Memorandum in Support of its Motion for Summary Judgment at 17.

**4.** Cohen affidavit at 5–6. Mr. Cohen, the plaintiff in this action, is the editor of *Chemical & Radiation Waste Litigation Reporter*.

possible effects of disclosure. The court finds two obvious holes in EPA's reasoning. First, the responsible parties probably know the identities of many of the other parties using shared disposal sites. If potential responsible parties were actively dumping in specific locations, the names of joint users would be, at the least, easily discoverable and joint collusive activities could be pursued absent disclosure. Second, there is no reason why the individual parties, once they received the notice letters, could not evade the EPA's intended enforcement on their own initiative by developing defensive tactics and pressuring known co-users of disposal sites.[5] The EPA's argument simply does not withstand close scrutiny.

Third, the government contends that disclosure of the names of recipients would inhibit the ability of the states to pursue their own enforcement programs for hazardous waste cleanup. In support of this argument, EPA refers to the adverse effects of premature disclosure on the federal program. Additionally, the defendant claims that state authorities will feel pressured to take action upon disclosure even if they are unprepared. The court must, again, dismiss these contentions as purely conclusory. There is no evidence that states will feel compelled to undertake state enforcement action simply because the federal government is actively enforcing federal environmental laws. The states may, instead, use the evidence provided by disclosure to prepare an effective case more rapidly. EPA information may greatly assist the states by identifying potential violators and indirectly pressuring them to voluntarily comply with state regulation before the states commence expensive litigation.

---

**5.** Mr. Kurent repeatedly points out in his affidavit that there are usually a substantial number of responsible parties connected with each hazardous waste disposal site. Kurent affidavit at 17.

**6.** While it has been established that Exemption 7(C) is not congruent with Exemption 6, *FBI v.*

*Exemption 7(C)*

EPA contends that the identities of the 33 individuals receiving notice letters are exempt from disclosure pursuant to FOIA Exemption 7(C), 5 U.S.C. § 552(b)(7)(C). The agency bases its claim on the belief that these individuals—as opposed to chairmen or presidents of corporations notified in their official capacities—would be subject to "undeserved criticism and to severe harassment in their communities." The defendant argues that the reputations of the individuals could be "irreparably damaged" if, in fact, they were not responsible for hazardous waste leakage. Kurent affidavit at 21.

■ Exemption 7(C) permits nondisclosure of documents constituting an "unwarranted invasion of privacy." This is a less strict standard than the "clearly unwarranted invasion of privacy" of Exemption 6. However, the two exemptions cover related privacy interests,[6] including those "regarding marital status, legitimacy of children, identity of fathers of children, medical condition, welfare payments, alcoholic consumption, family fights [and] reputation." *Rural Housing Alliance v. United States Department of Agriculture*, 498 F.2d 73, 77 (D.C.Cir.1974). The privacy exemption does not apply to information regarding professional or business activities. *Kurzon v. Department of Health and Human Services*, 649 F.2d 65, 69 (1st Cir.1981); *Sims v. Central Intelligence Agency*, 642 F.2d 562, 574 (D.C.Cir.1980). This information must be disclosed even if a professional reputation may be tarnished. Our circuit has recognized a privacy interest in a person's identity contained in investigatory records, however, these privacy interests have been confined to specific circumstances where disclosure may endanger the individual or threaten a source of government information.[7]

---

*Abramson, supra*, at n. 13, the difference lies in the standard of review and not in the relevant privacy interests covered by the exemption.

**7.** *See, Holy Spirit Ass'n for Unification of World Christianity v. FBI*, 683 F.2d 562 (D.C.Cir.1982); *Bast v. Department of Justice*, 665 F.2d 1251

■ It is the responsibility of the courts to balance the privacy interests on a case by case basis, "weighing the specific privacy invasion against the value of disclosing a given document." *Bast v. Department of Justice*, 665 F.2d 1251, 1254 (D.C.Cir. 1981) *citing Common Cause v. National Archives & Records Service*, 628 F.2d 179 (D.C.Cir.1980).

■ The information contained in the notice letters does not fall into the category of protected privacy interests. The individuals are identified only in their public roles as users of hazardous waste disposal sites. Individuals in their private lives do not dump significant amounts of hazardous substances into unprotected locations; they have no occasion to do so. The government's affidavit, again, provides only conclusions and no substantiated evidence or facts to distinguish individuals from the other named parties. The affidavit does not demonstrate why corporate officers would not be subject to the similar harassment if government were to disclose the name of the corporation.

The dumping of toxic substances is a matter of urgent public concern. Congress has emphasized the importance of hazardous waste pollution by passing a law providing funds to clean up hazardous waste disposal sites as rapidly as possible. One subcommittee of the House of Representatives referred to the hazardous substance leakage problem as a "ticking timebomb," [8] and urged expediency in developing and implementing effective enforcement programs. To this end, the public interest in knowing the identities of the individuals potentially responsible for these threats to national health outweighs the interest of the individuals in remaining anonymous.

*Exemption 5*

The defendant claims that the names of the notice letters recipients may remain undisclosed under Exemption 5 of FOIA. Exemption 5 permits an agency to withhold "inter or intra-agency memorandums ... which would not be available at law to a party in litigation with the agency." 5 U.S.C. § 552(b)(5). This court finds no merit in defendant's claim.

Two key decisions in our circuit are instructive in evaluating an Exemption 5 claim. In *Mead Data Central v. Department of Air Force*, 566 F.2d 242 (D.C.Cir. 1977), the court described the twin policy objectives of Exemption 5 as "avoiding premature disclosure of agency decisions and encouraging the free exchange of ideas among administrative personnel." *Id.* at 257. The court elaborated on its *Mead* opinion in *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854 (D.C. Cir.1980), where it held:

> The exemption thus covers recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency .... To test whether disclosure of a document is likely to adversely affect the purposes of the privilege, the courts ask themselves whether the document is so candid or personal in nature that the public disclosure is likely in the future to stifle honest and frank communication with the agency .... Finally, even if the document is predecisional ... it can lose that status if it is adopted formally or informally as the agency position on an issue or is used by the agency in its dealings with the public. [*Id.* at 866.]

■ Exemption 5 is inapplicable on its face. The agency is not seeking to withhold memoranda prepared for internal use, but letters it has voluntarily disclosed to the addressees. Furthermore, the notice letters resulted from preliminary investigations, not predecisional discussions. The list of names at issue is not a proposal, since the EPA has already decided on the status of the recipients as potential responsible parties. Finally, the names were not

(D.C.Cir.1981); *Lesar v. Department of Justice*, 636 F.2d 472 (D.C.Cir.1980).

**8.** Waste Disposal Site Survey, Report of the Subcommittee on Oversight and Investigations of the House Committee on Interstate and Foreign Commerce, 96th Cong., 1st Sess. Oct. 1979.

received from a third party for agency use, with the danger, upon disclosure, of threatening candor or undermining the value of the information. *Cf. Hoover v. Department of Interior,* 611 F.2d 1132 (5th Cir. 1980). It is clear that the agency has "adopted" the position articulated in the letters, thereby vitiating any privilege the agency might claim under Exemption 5.

*Conclusion*

For the reasons stated above, the plaintiff's motion for summary judgment is granted and the EPA's motion for summary judgment is denied.