**Judith Katherine EXNER, Plaintiff,**

v.

**U.S. DEPARTMENT OF JUSTICE,
Defendant.**

Civ. A. No. 93–2609 (JHG).

United States District Court,
District of Columbia.

Sept. 22, 1995.

James Hiram Lesar, Washington, DC, for plaintiff.

Bruce R. Hegyi, U.S. Attorney's Office, Washington, DC, for defendant.

### MEMORANDUM OPINION AND ORDER

JOYCE HENS GREEN, District Judge.

Plaintiff, Judith Katherine Exner, brought this case pursuant to the Freedom of Information Act, codified at 5 U.S.C. § 552 *et seq.*, seeking unredacted versions of two documents from the Department of Justice's Fed-

eral Bureau of Investigation (FBI). Presently pending are cross motions for summary judgment. For the reasons set forth below, defendant's motion is granted in part and denied in part. Exner's motion is denied.

## I. *Background*

Exner brought this action on December 21, 1993, seeking unredacted copies of two records in the possession of the FBI: (1) An August 17, 1962 memorandum from C.A. Evans to Mr. Belmont, captioned "John Roselli, Anti–Racketeering," describing, *inter alia*, a break-in at Exner's apartment which was observed by the FBI; and (2) a memorandum from the Special Investigative Division, dated November 4, 1963, which also refers to the break-in at Exner's apartment. Complaint ¶ 4.[1] Prior to filing this case, Exner had been provided with redacted versions of these documents, and was advised that information was withheld pursuant to FOIA Exemptions 6 and 7(C). During the pendency of this case, additional information from the documents was disclosed to plaintiff on two occasions: once in response to her administrative appeal, and once after plaintiff provided information that one of the individuals named in the documents was deceased.

The FBI continues to withhold information constituting identifying data or details concerning a former Special Agent of the FBI and two individuals identified as the sons of the former Special Agent, on the grounds that the information is exempt from disclosure pursuant to FOIA Exemption (b)(7)(C). That Exemption permits the government to withhold information compiled for law enforcement purposes if the release of the information could reasonably be expected to constitute an invasion of personal privacy. 5 U.S.C. § 552(b)(7)(C). Exner disputes both that the information was compiled for law enforcement purposes and that its disclosure

would invade the individuals' personal privacy.

## II. *Analysis*

 "The standard governing a grant of summary judgment in favor of an agency's claim that it has fully discharged its disclosure obligations under FOIA is well-established." *Weisberg v. Dep't of Justice,* 705 F.2d 1344, 1350 (D.C.Cir.1983). "[T]he agency bears the burden of showing that there is no genuine issue of material fact, even when the underlying facts are viewed in the light most favorable to the requestor." *Id.* Moreover, to the extent the government claims that documents are exempt from disclosure, the burden is on the government to prove that a given exemption applies, 5 U.S.C. § 552(a)(4)(B), and courts are to interpret the exemptions narrowly, recognizing that "[d]isclosure, not secrecy, is the dominant objective" of FOIA's statutory scheme. *Dep't of Air Force v. Rose,* 425 U.S. 352, 361, 96 S.Ct. 1592, 1599, 48 L.Ed.2d 11 (1976).

 Exemption 7(C) protects from disclosure records or information compiled for law enforcement purposes, "but only to the extent that the production of such [information] ... could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). In order for Exemption 7(C) to apply, a three-part test must be satisfied. The records "(1) must be ... 'investigatory record[s],' (2) must have been 'compiled for law enforcement purposes,' and (3) must satisfy the requirements of one of the six subparts of Exemption 7." *Pratt v. Webster,* 673 F.2d 408, 413 (D.C.Cir. 1982).

### A. *Were the Records "Compiled for Law Enforcement Purposes"?*

With regard to the first two prongs of the *Pratt* test, the Declaration of Robert A. Mor-

---

**1.** According to information provided in the redacted copies of the documents, which were attached to plaintiff's Complaint, the FBI maintained an observation post of Exner's apartment as part of an anti-racketeering investigation of an individual by the name of John Roselli. During the observation, an FBI agent witnessed two men on Exner's balcony; one of the men subsequently knocked on the window and entered Exner's apartment. An individual matching the description of that person, who was believed to be the

son of a former FBI agent, was later seen leaving the apartment "under clandestine circumstances," and was observed driving away in an automobile registered to the former FBI agent.

The same documents indicate that Exner, then known as Judy Campbell, was in telephone contact with President John F. Kennedy's secretary, Evelyn Lincoln, at the White House, and was thought by some to have had an affair with President Kennedy.

an ("Moran I") attached to defendant's motion for summary judgment, states:

> The two documents at issue were retrieved from FBI investigatory file 92–3267 ... This file contains documents compiled in the course of FBI investigatory activities concerning the late John Roselli, the subject of an intensive FBI investigation into his underworld/criminal activities. The FBI investigation was instituted and conducted under the provisions of the Federal Anti–Racketeering statutes. Thus, the documents clearly constitute records or information compiled for law enforcement purposes within the meaning of [Exemption 7(C) ].

Moran I at ¶ 19.

Plaintiff disputes that the records were compiled for law enforcement purposes, arguing that "it is evident that the information withheld in these documents had no bearing on an investigation of Johnny Rosselli [sic]." Plaintiff's Motion at 8. Plaintiff asserts that the specific information she seeks concerns not the investigation of Roselli, but rather, the break-in to Exner's apartment. Exner further argues that the FBI "withheld information and covered up the commission of a crime" by not reporting the break-in to local authorities. Under these circumstances, Exner contends that the government should not be permitted to withhold the information pursuant to the law enforcement exception. Motion at 9. Moreover, throughout her pleadings, Exner insists that the FBI's surveillance activities and the resulting records were not for law enforcement purposes but rather for political purposes.[2] Finally, plaintiff contends that at least a genuine issue of material fact exists as to whether the records were compiled for law enforcement purposes, such that summary judgment should be denied.

Plaintiff's arguments, while interesting, are ultimately unpersuasive in light of the test established by our Circuit Court for determining whether records were compiled for law enforcement purposes. In order to "pass the Exemption 7 threshold":

> *First, the agency's investigatory activities that give rise to the documents sought must be related to the enforcement of federal laws or to the maintenance of national security.* To satisfy this requirement of a "nexus," the agency should be able to identify a particular individual or a particular incident as the object of its investigation and the connection between that individual or incident and a possible security risk or violation of federal law.
>
> *Second, the nexus between the investigation and one of the agency's law enforcement duties must be based on information sufficient to support at least "a colorable claim" of its rationality* ... Of course, the agency's basis for the claimed connection between the object of the investigation and the asserted law enforcement duty cannot be pretextual or wholly unbelievable.

*Pratt,* 673 F.2d at 420–21 (emphasis in original).

Defendant has substantiated its claim that the records in question were compiled for law enforcement purposes. The records were located in an investigatory file, number 92–3267, at the FBI.[3] Moran I ¶ 19. Plaintiff admits that "[t]he FBI's '92' classification is for anti-racketeering cases." Plaintiff's Motion at 2, n. 1. The records concern an investigation of an individual under the federal anti-racketeering statutes. Moran I ¶ 19. Thus, the agency has adequately established "that its investigatory activities [were] realistically based on a legitimate concern that federal laws [were] violated ... [and] ha[d] some plausible basis and ... rational connection to the object of the agen-

---

**2.** According to Exner, the FBI was concerned with obtaining information concerning President John F. Kennedy and his alleged romantic relationship with plaintiff, and the FBI conducted its observation of Exner at the direction of then-FBI Director J. Edgar Hoover. Plaintiff also suggests a connection between the break-in at her apartment and the death of actress Marilyn Monroe two days before the break-in. According to Exner, an individual close to President Kennedy allegedly attempted to have Monroe's apartment searched following her death for items that could incriminate or embarrass President Kennedy. Exner implies that similar motives were behind the break-in of her apartment.

**3.** The fact that a copy of the documents might also be found in a non-law enforcement file does not dictate a different result.

cy's investigation." *Pratt,* 673 F.2d at 421.[4] Plaintiff's conjecture as to the alternative reasons for the surveillance of her apartment are insufficient to create a genuine issue of material fact or to defeat the government's claim.

## B. *The Personal Privacy Claim*

■ The government has withheld from plaintiff on privacy grounds the name of the former FBI agent identified in the documents [5], the names of his two sons, and personal information pertaining to one of the sons. According to the government, "[t]he information pertaining to the former Special Agent and his sons is highly personal and constitutes raw investigative data the release of which could logically result in serious negative ramifications for such individuals (*e.g.,* embarrassment, loss of reputation, retaliation, economic or legal.)" Moran I ¶ 18.

Exemption 7(C) requires the Court to make a *de novo* determination, "balanc[ing] the public interest in disclosure against the [privacy] interest Congress intended the Exemption to protect." *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press,* 489 U.S. 749, 776, 109 S.Ct. 1468, 1483, 103 L.Ed.2d 774 (1989). Thus, evaluation under Exemption 7(C) is a three-step process, comprised of 1) identifying the privacy interest at stake, 2) identifying the public interest at stake, and 3) balancing the two interests. *Stern v. Fed'l Bureau of Investigation,* 737 F.2d 84 (D.C.Cir.1984).

## 1. *Privacy Interests*

The government relies on our Circuit's oft-cited decision in *Fund for Const'l Gov't v. Nat'l Archives,* 656 F.2d 856 (D.C.Cir.1981) as support for its decision to withhold on

privacy grounds the names and other personal information relating to the former FBI agent and his sons. In that case, the Court stated that "information in an investigatory file tending to indicate that a named individual has been investigated for suspected criminal activity is, at least as a threshold matter, an appropriate subject for exemption under 7(C)." *Fund for Const'l Gov't v. Nat'l Archives,* 656 F.2d at 863. The Court further explained,

> [W]e do not state a *per se* rule that, in every case where individuals have been investigated but not charged with a crime, that information is properly exempt from disclosure under Exemption 7(C). We adhere to the view that any *per se* approach would be inconsistent with the Court's duty to balance *de novo* the privacy interests at stake against the public interest in disclosure. We do observe, however, that release of this type of information represents a severe intrusion on the privacy interests of the individuals in question and should yield only where exceptional interests militate in favor of disclosure.

*Id.* at 866.[6]

*Fund for Const'l Gov't* has been frequently cited for its proposition that information concerning the subjects of criminal investigations should be withheld because of the stigma and injury to reputation that disclosure could cause. *See, e.g., Bast v. United States Dep't of Justice,* 665 F.2d 1251 (D.C.Cir. 1981); *King v. Dep't of Justice,* 830 F.2d 210 (D.C.Cir.1987). However, the instant case is distinguishable because here the individuals named in the documents in question were *not* the subject of the FBI's investigation; rather, they are an individual the FBI happened to observe in the course of a separate investigation, and that individual's father.

---

**4.** This is particularly true in light of the "more deferential attitude" which our Circuit has found to be appropriate for "claims of 'law enforcement purpose' made by a criminal law enforcement agency". *Pratt,* 673 F.2d at 418.

**5.** Even though the former agent is deceased, defendant points out that disclosure of his name would *de facto* disclose the names of his sons. The government contends, and the Court agrees, that under these circumstances, the government has demonstrated a "particularized need to continue withholding" the name of the deceased

former agent. *Schmerler v. Fed'l Bureau of Investigation,* 696 F.Supp. 717, 722 (D.D.C.1988), *rev'd on other grounds,* 900 F.2d 333 (D.C.Cir. 1990).

**6.** Plaintiff herself admits, to the extent that the events in question constituted an unlawful breaking and entering of Exner's apartment, "[i]t is true that release of information implicating a person in a crime could be embarrassing under normal circumstances." Reply at 11.

Arguably, the fact that the individuals named were not suspects or targets of an FBI investigation decreases the privacy interest, because the possible stigma and embarrassment of being named in an FBI report are lessened. On the other hand, disclosure of a person's name under these circumstances could be viewed as constituting an even greater invasion of personal privacy than it would for a person who was actually the subject of an investigation, because of the speculation that would attend disclosure of the names under the circumstances presented here. As our Court of Appeals noted in *Stern:*

> individuals have a strong interest in not being associated unwarrantedly with alleged criminal activity. Protection of this privacy interest is a primary purpose of Exemption 7(C) ... "[T]he 7(C) exemption recognizes the stigma potentially associated with law enforcement investigations and affords broader privacy rights to suspects, witnesses, and investigators."

*Stern,* 737 F.2d at 91–92 (quoting *Bast v. Dep't of Justice,* 665 F.2d 1251, 1254 (D.C.Cir.1981); *King v. United States Dep't of Justice,* 830 F.2d 210, 233 (D.C.Cir.1987) (same).

Because the former FBI agent's son named in the documents, although not a specific target of an FBI investigation, was possibly the person observed engaging in criminally suspect behavior at Exner's apartment, the Court finds that a significant privacy interest is at stake. Disclosure of the individual's name could stigmatize him and cause embarrassment due to his possible connection with the activities described in the documents.[7] Thus, the Court must balance this

privacy interest against the public interest in disclosure, if any.

### 2. *Public Interests in Disclosure*

In *Reporters Committee,* the Supreme Court identified the public interest in FOIA disclosure as "shed[ding] light on an agency's performance of its statutory duties"—in other words, to further a "citizen's right to be informed about 'what their government is up to.'" *Reporters Committee,* 489 U.S. at 773, 109 S.Ct. at 1481 (citation omitted). Our Circuit has stated that this is the "only public interest relevant for purposes of Exemption 7(C)." *Davis v. United States Dep't of Justice,* 968 F.2d 1276, 1282 (D.C.Cir.1992).

Significantly, *all* information pertaining to the events in question has been disclosed to plaintiff except for the name of the individual observed entering Exner's apartment, personal information about that person, and the name of his father. Indeed, even the fact that the person observed entering Exner's apartment was identified as *possibly* being the son of a *former* FBI agent was disclosed to Exner.

Exner articulates the public interests in disclosure of the remaining information as: (1) facilitating the identification and apprehension of suspected criminals; (2) making government officials accountable for their actions and inactions; (3) enabling plaintiff to pursue any legal remedies she may have against the perpetrator of the break-in; and (4) furthering understanding of "an extremely sensitive political operation which is being covered up." Reply at 14. None of these arguments is persuasive.[8] This is primarily so because Exner has not shown a nexus between the break-in to her apartment and the FBI[9], save for the fact that the FBI

---

7. The fact that the incidents in question occurred more than thirty years ago may, but does not necessarily, diminish the privacy interest somewhat. *See, e.g., Diamond v. Fed'l Bureau of Investigation,* 707 F.2d 75 (2nd Cir.1983); *Branch v. Fed'l Bureau of Investigation,* 658 F.Supp. 204 (D.D.C.1987).

8. Two of Exner's asserted interests warrant only cursory mention. Neither Exner's interest in identifying the perpetrator of the "crime" involved here, nor her interest in pursuing her legal remedies against that person, pertain to the

workings of government, disclosure of which is the dominant objective of FOIA.

9. Plaintiff makes a number of allegations in an attempt to establish a factual nexus between the break-in and the FBI. She states that "the break-in most likely represented an attempt to obtain information which would comprise [sic] the President and could be used to blackmail him or those close to him." Reply at 17. Moreover, according to plaintiff, "[t]here are many circumstances surrounding this crime which suggest that this episode concerns an extremely sensitive political operation which was not reported to the

observed the break-in. Thus, it is plainly evident that disclosure of the names would not shed any additional light on "what the government is up to."

"Information that 'reveals little or nothing about an agency's own conduct' does not further the statutory purpose; thus the public has no cognizable interest in the release of such information." *Beck v. Dep't of Justice,* 997 F.2d 1489, 1493 (D.C.Cir.1993). "[A] third party's request for law enforcement records or information about a private citizen can reasonably be expected to invade that citizen's privacy, and ... when the request seeks no 'official information' about a Government agency, but merely records that the Government happens to be storing, the invasion of privacy is 'unwarranted' ". *Reporters Committee,* 489 U.S. at 780, 109 S.Ct. at 1485. The public interest articulated by Exner, minimal at best, is outweighed by the privacy interest of the individuals named in the documents. Consequently, assuming that *in camera* review of the documents in question substantiates the government's claims, the Court will not order defendant to disclose the redacted names.[10]

### III. *Conclusion*

For the foregoing reasons, it is

ORDERED that plaintiff's motion for summary judgment is denied; it is

FURTHER ORDERED that defendant's motion for summary judgment is granted in part and denied in part. Defendant shall submit unredacted copies of the documents in question for *in camera* review no later than October 5, 1995. Should the Court's *in camera* review substantiate defendant's Ex-

emption 7(C) claims, judgment will be entered in favor of defendant.[11]

IT IS SO ORDERED.

---

police by the FBI in order to cover it up." Motion at 17. "The withholding [sic] of these names may be a key to unraveling the precise nature of this political operation by the FBI". *Id.* Viewing these allegations in the light most favorable to Exner, the Court cannot find that she has demonstrated plausible grounds for finding a connection between the workings of the FBI and the break-in at her apartment.

10. *In camera* review will also enable the Court to determine whether defendant properly withheld the additional personal information about the former agent's son contained in the documents.

11. It is evident to the Court, based on the language of FOIA as interpreted by the Supreme Court and our Circuit Court, that the government is not *obligated* under FOIA to disclose the requested information to Exner. Still, in light of FOIA's overarching goal of "disclosure, not secrecy", and the recently-implemented executive branch policies to that effect, it is somewhat perplexing that instead of providing Exner the information she seeks, the government has elected to commit resources to pursuing two years of litigation, requiring significant effort on the part of the parties and their counsel, as well as the Court, to prevent disclosure.